J-A05041-23 & J-A05042-23

2023 PA Super 89

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL GRAY | : | |
| | : | |
| Appellant | : | No. 2288 EDA 2021 |

Appeal from the Order Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0006945-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL GRAY | : | |
| | : | |
| Appellant | : | No. 2331 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0001404-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATHANIEL GRAY | : | |
| | : | |
| Appellant | : | No. 2332 EDA 2021 |

Appeal from the Judgment of Sentence Entered October 19, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0002512-2020

BEFORE:  LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

OPINION BY MURRAY, J.:                                   **FILED MAY 25, 2023**

Nathaniel Gray (Appellant) appeals from the judgments of sentence imposed after a jury convicted him of two counts each of robbery, criminal conspiracy, terroristic threats, and possession of an instrument of crime (PIC).[1]  After careful review, we affirm.

Appellant's convictions arise from three criminal informations, each pertaining to separate robberies Appellant committed with various co-conspirators in the same Philadelphia neighborhood.  The trial court explained:

> Under docket CP-51-CR:0006945-2018 [(No. 6945)], the evidence at trial established that on July 25, 2018, complainant Cedric Moodie [(Mr. Moodie)], was sitting alone in his vehicle on the 6100 block of N. Franklin Street when Appellant and co-defendant Devin Baker [(Baker)] drove up beside [Mr. Moodie]. [] Baker was operating the vehicle, in the front [] passenger [seat] was Jasmine Askew, and the rear passenger was Appellant…. [Mr. Moodie] previously knew [] Baker from high school.  After the vehicle pulled alongside Mr. Moodie, Appellant exited the car, approached Mr. Moodie, and attempted to open his door.  When Mr. Moodie objected, Appellant said words to the effect of "I'll spray this car.  I'll kill you."  [] Baker [] pulled his car in front of Mr. Moodie, [and] Appellant went to the trunk of the vehicle, removed a handgun, and placed it in his waistband.  Mr. Moodie exchanged words with [] Baker, then Appellant, with a gun on his person, came and went through [Mr.] Moodie's pocket, demanding money and anything else he had on his person.  Appellant took Mr. Moodie's phone, demanded his password, and then proceeded to transfer money to Jasmine Askew's account through [the electronic banking application] "CashApp."  Not satisfied with the amount [of funds in Mr. Moodie's account], Appellant forced Mr. Moodie to drive to an ATM.  No money could be withdrawn since

---

[1] 18 Pa.C.S.A. §§ 3701(a)(1), 903(a), 2706(a)(1), 907(a).

Mr. Moodie's account had been emptied following the transfer via the CashApp [transaction]. Next, Appellant forced Mr. Moodie to drive to the Cedarbrook Mall[,] where Appellant and [] Baker sold [Mr. Moodie's] phone via a phone kiosk. Mr. Moodie was able to flee, and he reported the robbery to the police the next morning. Police were able to secure video surveillance from [an] ATM and from the Mall. …

Under docket CP-51-CR-0001404-2020, [(No. 1404)], the evidence at trial established that on July 13, 2019, complainant[] Danish Rashid [(Mr. Rashid)] was working as a clerk at a gas station near the intersection of Broad Street and Stenton Avenue when Appellant and co-defendant Cameron Hayes [(Hayes)] entered the gas station. [Video surveillance from the gas station recorded the incident.] After a brief conversation, Appellant, [] Hayes and [Mr. Rashid] exit[ed] the store. All three return[ed] inside and shortly thereafter[,] Appellant and [] Hayes are seen pushing Mr. Rashid against the clerk's booth. [] Hayes brandishe[d] a firearm and both Appellant and [] Hayes physically restrain[ed] Mr. Rashid as they [took] money from his person before they left the gas station. … A search of Appellant's Instagram account revealed [photos of] Appellant wearing the same shirt as worn in the robbery. …

Under docket CP-51-CR-0002512-2020 [(No. 2512)], the evidence at trial established that on December 2, 2019, on the 6100 block of North Franklin Street, Appellant entered the home of the complainant, Angela Horne [(Ms. Horne)], a neighbor and friend of [Appellant's] mother, and after a brief interaction with [Ms. Horne], [Appellant] opened her front door and allowed two masked men to enter. Those two men and Appellant [went] upstairs where one of the two men produced a firearm from his hoodie pocket (captured [by a] motion[-]activated [video] camera) and threatened Ms. Horne. Once upstairs [and] no longer on camera, they push[ed] [Ms. Horne] to the floor, and sa[id] "Bitch, where's the money!" One of the masked men then put[] a firearm to [Ms. Horne's] mouth. They threaten[ed] to blow her head off. They took [Ms. Horne's] handbag, house keys, [and] car keys. All three men, including Appellant, fle[d] the property before police arrival. To date, the two masked men have not been [identified] and remain on the street. [Ms. Horne] identified Appellant in her statement to police, to responding officers, and on a 911 call.

Trial Court Opinion, 5/26/22, at 2-4.

The Commonwealth charged Appellant with numerous crimes at No. 6945 (robbery of Mr. Moodie), No. 1404 (robbery of Mr. Rashid), and No. 2512 (robbery of Ms. Horne).

Prior to trial, the Commonwealth filed a motion to consolidate the three cases based on their similarities. *See* Brief in Support of Motion to Consolidate, 12/16/20, at 9 ("The Commonwealth [] notes [] the location of the robberies – all in the 35th police district, and [two of the robberies occurred] on the same block in the City … of Philadelphia, along with the timing of the robberies (all within about 18[] months).").  The Commonwealth also claimed, "a jury will be able to separate the [three cases] and consider the allegations independently when determining a verdict upon each charge." *Id.* at 12.

On January 16, 2021, Appellant filed a response opposing the Commonwealth's motion to consolidate.  Appellant argued the trial court

> should keep [the three] cases separated because the evidence of two gunpoint robberies, and a burglary, against different complaining witnesses and with different codefendants[,] is not admissible in a separate trial so that there would be no jury confusion for [Appellant,] who is accused [at No. 6945] of crimes that predate the two other [robberies (at Nos. 1404 and 2512)] by approximately a year and a year and [a] half.
>
> * * *
>
> In effect, the government asks [the trial c]ourt to strip [Appellant] of his presumption of innocence in this case by presenting the jury [] with evidence that [Appellant] committed other, subsequent

- 4 -

crimes, with different codefendants, at other locations, and against different complaining witnesses.

Response, 1/16/21, at 4, 6 (bold omitted).

The trial court held a hearing on January 21, 2021. The Commonwealth advocated for consolidation as follows:

[PROSECUTOR]: Now the Commonwealth's theory for this motion is that evidence of the other robberies would be admissible in the cases for the other robberies[,] both direct and circumstantial evidence[,] because it shows [Appellant's] common [] scheme, design, opportunity, motive, absence of mistake, consciousness of guilt, *res gestae* and (unintelligible) of the facts, events and circumstances.

THE COURT: The what?

[PROSECUTOR]: I'll elaborate on that. So, first of all, Your Honor, I would note the location of all these robberies. All of these robberies occurred in the 35th Police District, which is in the Northwest Police Division of Philadelphia.

The first and the third robberies actually [occurred] on the same block.

* * *

[PROSECUTOR]: The 6100 block of North Franklin Street.

In all of these cases[, Appellant acted] with co-conspirators to select known complainants[,] either to himself or a co-conspirator[,] and prey[ed] on them knowing that they'll both fear retaliation and fear appearing in court.

So, [Mr. Moodie] was only about 22 years old when the robbery occurred. He was known to [Appellant's] then codefendant, [] Baker. And that occurred in the 6100 block of North Franklin Street.

In that case[, Appellant] and [] Baker approached [Mr. Moodie]. [Appellant] is alleged to have been holding the gun and threatened [Mr. Moodie]. [Appellant and Baker] forced [Mr.

- 5 -

Moodie] to go to an ATM and sought to withdraw money. When there was no money taken from [the ATM, Appellant and Baker] were able to take [Mr. Moodie's] phone and sell it at a Walmart.

The only video evidence really is from the ATM and the Walmart. And you see [Appellant] and [Mr. Moodie] in the Walmart when the phone is actually sold.

\* \* \*

[PROSECUTOR]: The initial encounter occurred on the street[;] there's no actual video of the gunpoint robbery.

\* \* \*

[PROSECUTOR]: There is some cell phone evidence. Mr. Baker's phone was recovered. And there are photos of [Appellant dressed] in the clothing that he was wearing during [the] robbery [of Mr. Moodie].

THE COURT: Okay.

[PROSECUTOR]: Now, [Appellant and Baker] both give odd statements [in pre-trial proceedings,] as I believe [Appellant's counsel] pointed out in his [opposition]. Initially they identified somebody else but [Appellant] is identified as the gunman at the preliminary hearing.

Again, [Mr. Moodie] is very afraid because he knew … Baker. While [Appellant was] out on bail in that case, again, in the 35th Police District[, Appellant] and another co-defendant, [Hayes,] whose case has been severed from [Appellant's], committed a gunpoint robbery of a gas station [clerk, Mr. Rashid].

\* \* \*

[The Commonwealth] presented the full video of that incident and the video clearly [shows] at least a ten or fifteen minute[,] lengthy interaction with [Mr. Rashid]. They go outside and talk. There's an [] apparent relationship [between the three men] before … Hayes[] actually pulls a gun and shoves [Mr. Rashid].

- 6 -

[Appellant] is actually physically holding [Mr. Rashid] while this happens. [Appellant and Hayes] pull out [Mr. Rashid's] wallet, go[] through the wallet and take[] his money and then flee[] the location.

Again, a firearm is not recovered because [Appellant and Hayes were] able to get away before police respond.

Subsequent prison calls from [Hayes] discussed the robbery and the motive being … the sale of Percocets or some other drug[-]related motive.

But, from this discussion of the robbery it is clear that this is not just a random selection [of victims,] but a known individual to the people in the video.

And I would state that would be apparent to anyone watching the video prior to [Appellant and Hayes] pulling the gun and robbing [Mr. Rashid,] that [he] was an acquaintance.

In [Mr. Rashid's] case[,] some Instagram [evidence] was recovered showing [Appellant dressed] in the same outfit as [the one he wore during] the robbery…. But, again, there is no firearm recovered.

Again, while [Appellant was] out [o]n bail[,] now with these two gunpoint robberies[,] the third robbery occur[ed] in … December 2019. It [occurred approximately] six months after the gas station … robbery in the 6100 block of North Franklin Street.

The complainant[, Ms. Horne,] is actually a good friend of [Appellant's] mother. … So, she is known and she knows [Appellant]. She actually states in her [police] statement that she was sending [Appellant] money while he was [incarcerated]. …

[Appellant] comes over to [Ms. Horne's] door and he is welcomed into her home. They actually embrace and have a momentary conversation.

After that, however, [Appellant] turns and unlocks the front door[,] allowing two masked men to enter. …

Two masked men enter, one of whom pulls a firearm out from his hoodie[,] and then they go upstairs where they hold [Ms. Horne] at gunpoint and take her purse and her cell phone.

Two of the [men] that [Appellant] let into the house run one direction. [Appellant] exits from the other direction.

[Ms. Horne] identifie[d Appellant] only by name. [Appellant was] the only one not wearing a mask[,] because again he knew [Ms. Horne] and he let the other two [men] into the property.

So, in all of these cases, Your Honor, [Appellant] is acting with others. He's holding a gun in the first case but not the second two.

* * *

[PROSECUTOR]: … [I]n short[,] similar results do not usually occur through abnormal circumstances and the reoccurrence of similar results tends to … negate accident or inadvertence. …

So, in … the first case, [the evidence the Commonwealth] had is video of a phone sale at Walmart…. A jury can be presented. The wool could be pulled over [the jury's] eyes [by the defense,] and the[ jury] can say we don't know what happened. There's no gun, [and] there's no video of any gun. We just see people going into a Walmart and selling a phone. We see some video [from] an ATM but we don't know what happened.

And then with the third case[, Appellant] is welcomed into [Ms. Horne's] home[,] which is an unusual scenario for a gunpoint robbery, right? … [Appellant is] greeted by [Ms. Horne,] who knows [Appellant]. And only then[,] after they have this pleasant interaction[,] does [Appellant] allow in the two gunpoint robbers[,] who … actually grab [Appellant] and yank him upstairs and then they all flee after this robbery occurs.

So, if [Ms. Horne's] case [was] presented alone in front of a jury[,] then I believe [the] defense would argue that [Appellant] was just as much incidentally there as anything else. That [Appellant] had been welcomed in by [Ms. Horne] and it's just [Appellant's] bad luck … that suddenly these two masked men enter and rob [Ms. Horne] at gunpoint.

So, what we have here is somebody who has used his relationships with others to select these victims, all of whom are afraid, all of whom are known, and knowing that they would be vulnerable to these kind of attacks, selects them, [and] robs them.

And now[, the] defense wants to present to the jury these cases separately … so that a jury does not see the full picture of this conduct. … So I don't want to put the complainants through three separate trials and have them have to testify three times in front of [Appellant].

I would note the same police person[nel] for all of these cases [are involved] because of where [the three robberies] took place. It's the Northwest Police Division. There are multiple detectives involved. But … many of the same police and responding officers [are involved in the three cases] because of the location of the cases.

Again, given the use of resources, I think it would make a lot more sense to have those officers testify at one jury trial as opposed to three separate jury trials.

I think that in all of these cases the jury is still going to face the same task, right? Essentially they're going to have to decide what [Appellant's] role was in these robberies and whether or not he's the proper person to convict.

So, it's not going to change what the charges are in front of [Appellant].

THE COURT: Right.

[PROSECUTOR]: Or any kind of guilt particularly with the first [robbery,] where there is no gun on video[,] and the third [robbery,] where [Ms. Horne] welcomes [Appellant] into the home. The jury is going to be able to flush that out.

There are three separate dates [of the robberies]. I admit that, but I think this shows the clear picture of [Appellant's] criminal conduct, his intent and the fact that this was not any kind of accidental role. This was in fact part of his scheme to rob people at gunpoint.

N.T., 1/21/21, at 6-15. After Appellant's counsel verbalized Appellant's argument against consolidation, *id.* at 16-27, the trial court granted the Commonwealth's request and ordered that the three cases be consolidated. *Id.* at 30; *see also* Order, 1/21/21 (same).

The case proceeded to trial in June 2021. At No. 6945 (robbery of Mr. Moodie), the jury found Appellant guilty of terroristic threats. However, the jury **acquitted** Appellant of robbery, kidnapping, false imprisonment, unlawful restraint, and carrying a firearm in Philadelphia.[2] At No. 1404 (robbery of Mr. Rashid), the jury found Appellant guilty of robbery, conspiracy, and PIC. At No. 2512 (robbery of Ms. Horne), the jury found Appellant guilty of robbery, conspiracy, PIC, and terroristic threats. The trial court deferred sentencing for the preparation of pre-sentence investigation and mental health reports.

On October 19, 2021, the trial court sentenced Appellant to an aggregate 26 — 52 years in prison.[3] Appellant did not file post-sentence motions. Appellant timely filed separate notices of appeal for each of the three

---

[2] *See* 18 Pa.C.S.A. §§ 3701(a)(1), 2901(a)(2), 2903(a), 2902(a)(1), 6108.

[3] On October 20, 2021, the trial court issued an amended sentencing order which clarified that Appellant was ineligible for boot camp or the Recidivism Risk Reduction Incentive Program. Order, 10/20/21.

cases.[4]  On January 24, 2022, this Court consolidated the appeals *sua sponte*.

Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issue for review:

Did the trial court err and/or abuse its discretion when it granted the Commonwealth's request to consolidate three matters charging unrelated robberies for a single jury trial where the evidence related to each robbery is not admissible at trials of the other robberies as evidence of a common plan, scheme or design — or for any other purpose?

Appellant's Brief at 4.

We have explained that "[w]hether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." ***Commonwealth v. Lively***, 231 A.3d 1003, 1006 (Pa. Super. 2020) (citations omitted).  "It is the appellant's burden to establish prejudice." ***Commonwealth v. Shackelford***, ___ A.3d ___, ___, 2023 WL 2940384, at *5 (Pa. Super. Apr. 14, 2023) (citation omitted).

"The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time[-]consuming duplication of evidence." ***Commonwealth v. Johnson***, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (citation omitted).

---

[4] Appellant has complied with ***Commonwealth v. Walker***, 185 A.3d 969, 971 (Pa. 2018) (requiring appellants to file separate notices of appeal from single orders that resolve issues on more than one docket).

Our Supreme Court has stated that while

> evidence of other crimes committed by a defendant is generally not admissible to show his criminal propensity…, such evidence is relevant and admissible to establish the perpetrator's identity, or the existence of a common scheme or plan. **Commonwealth v. Bronshtein**, … 691 A.2d 907, 915 (Pa. 1997); **see** Pa.R.E. 404(b)(2) (evidence of other crimes, wrongs, or acts may be admitted as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident).

**Commonwealth v. Keaton**, 45 A.3d 1050, 1066 (Pa. 2012).

This Court has instructed:

> Pennsylvania Rule[] of Criminal Procedure 582(A)(1) provides that distinct offenses which do not arise out of the same act or transaction may be tried together if the "evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[,] or the offenses charged are based on the same act or transaction." Pa.R.Crim.P. 582(A)(1)(a)-(b). If the trial court finds that the evidence is admissible and the jury can separate the charges, the court must also consider whether consolidation would unduly prejudice the defendant. **Commonwealth v. Thomas**, … 879 A.2d 246, 260 (Pa. Super. 2005).

**Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa. Super. 2018).

Pennsylvania Rule of Criminal Procedure 583 provides a "court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. We explained,

> the "prejudice" of which Rule [583] speaks is … that which would occur if the evidence tended to convict [the] appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a

- 12 -

natural consequence of a criminal trial, and it is not grounds for severance by itself.

***Commonwealth v. Lauro***, 819 A.2d 100, 107 (Pa. Super. 2003) (citations and quotations omitted).

Finally:

Reading [] rules [582 and 583] together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: 1[.] whether the evidence of each of the offenses would be admissible in a separate trial for the other; 2[.] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, 3[.] whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Ferguson***, 107 A.3d 206, 210-11 (Pa. Super. 2015) (citations and brackets omitted).

Indictments may be consolidated for trial "where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." ***Commonwealth v. Janda***, 14 A.3d 147, 156 (Pa. Super. 2011) (citation and footnote omitted).

> In seeking consolidation of separate indictments, the Commonwealth is required to show more than that the crimes are of the same class. Rather, it must be shown that a high correlation in the details of the crimes exists such that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others.

*Commonwealth v. Newman*, 598 A.2d 275, 278 (Pa. 1991); *see also*
*Commonwealth v. Natividad*, 773 A.2d 167, 174 (Pa. 2001) (same). "To establish similarity, several factors to be considered are the elapsed time between the crimes, the geographical proximity of the crime scenes, and the manner in which the crimes were committed." *Commonwealth v. Robinson*, 864 A.2d 460, 481 (Pa. 2004) (citation omitted).

Here, Appellant claims the trial court erred by consolidating the three cases, which unduly prejudiced Appellant, and by finding that his crimes in the three cases established a common plan, scheme or design. *See* Appellant's Brief at 22-45. Appellant asks this Court to vacate the judgments of sentence and remand for separate new trials. *Id.* at 45.

According to Appellant:

> Because the trial court concedes that the evidence of [Appellant's] multiple (alleged) robberies was not relevant to establish his identity, it can only be admissible if it shows a common plan, scheme or design embracing commission of multiple crimes. Moreover, proof of one must tend to prove the others under the rule set forth by our Supreme Court.
>
> A review of controlling authority regarding the common plea [*sic*] doctrine … discloses that the evidence of [Appellant's] three distinct [] crimes failed to satisfy the requirements for admission at every trial – and thus was insufficient to permit lawful consolidation.

*Id.* at 34 (quotation marks omitted); *see also id.* at 35-40 (Appellant relying on *Commonwealth v. Brown*, 505 A.2d 295 (Pa. Super. 1986), and *Commonwealth v. Ross*, 57 A.3d 85, 98-99 (Pa. Super. 2012) (*en banc*) ("The Commonwealth must prove beyond a reasonable doubt that a defendant

has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." (citations omitted))).

Appellant contends "it was an abuse of discretion for the trial court to deny a defense request for separate trials where … the gunpoint robberies occurred in a city where multiple gunpoint robberies occur each day." Appellant's Brief at 44. Appellant asserts "there were striking dissimilarities" between the three cases, and states:

> The three incidents occurred over the span of more than a year and a half. Only one victim claims to have known [Appellant] before the incident. [Appellant] was the person alleged to hold a gun in only one case[, No. 6945] — and was acquitted of possessing a gun in that matter. There is no evidence that [Appellant] committed any of the crimes with the same co-conspirator. None of the victims knew each other. None of the alleged robberies were committed to perpetrate, or cover up, another of the robberies. Finally, there is no consistent unique "signature" or *modus operandi* among the disparate crimes. One robbery occurred inside a business, one occurred inside a home, and one occurred on a public street and involved an alleged kidnapping culminating in another county. The gender and ages of the victims was varied as well.

*Id.* at 43-44 (citation omitted).

Conversely, the Commonwealth argues

> there were significant similarities among the incidents to demonstrate a common scheme or plan. None were your typical robbery in that [Appellant] and his cohorts did not approach strangers, order them to give money, then run away. The three incidents all occurred in very close proximity (two on the same block), involved [Appellant] acting with other people, in the evening, where they used prior relationships with acquaintances to rob them at gunpoint during unusually long interactions. In the cases that occurred on the same block, the perpetrators used the

- 15 -

victims' phones to transfer money through an application called CashApp.

Commonwealth Brief at 8-9 (record citations omitted); *see also id.* at 9 (stating "the common scheme evidence was offered to prove [Appellant's] intent to commit the crimes," as opposed to the identity of the perpetrators).

According to the Commonwealth:

Based on the unusual way that [Appellant] and his cohorts robbed local people whom they had prior relationships with from the neighborhood, the incidents together showed a common scheme or plan and were joined to show what [Appellant's] true intentions were[,] as his [trial] counsel tried to assert that [Appellant] never intended to rob anyone.

*Id.* at 9-10; *see also id.* at 10 (citing N.T., 6/22/21, at 53, 82-83, 130-38, 157-59, and N.T., 6/23/21, at 47-49; 100-04, 109, 112-16).

Finally, the Commonwealth argues consolidation did not unduly prejudice Appellant, and the respective evidence in the three cases "was easily capable of separation because the crimes took place at different times, and none of the eyewitnesses to the incidents overlapped." *Id.* at 12.

In defending its decision, the trial court reasoned:

Here, the charges against Appellant constituted an ongoing course of similar conduct[,] overlapping periods of time in the same general locale. Moreover, the evidence concerning each alleged victim at trial was readily separable by the jury as the trier-of-fact, as each victim testified to the events supporting the respective charges, and corroborated by other distinguishable evidence, specifically, each crime was capture[d], however briefly, on video surveillance. Additionally, Appellant was charged with numerous offenses against each of the victims and was only convicted of terroristic threats … as to Mr. Moodie[; Appellant] was found not guilty of robbery[, kidnapping, false imprisonment, unlawful restraint, and carrying a firearm in Philadelphia]. As to

> Mr. Rashid, Appellant was seen on the video with a gun and was appropriately found guilty of robbery …, conspiracy to commit robbery …, and [PIC]. Likewise, wherein Ms. Horne was the complainant. Contrary to [Appellant's] arguments, there was no confusion on the part of the jury.
>
> *  *  *
>
> [The trial court did not abuse [its] discretion [in consolidating the three cases,] and the jury could separate each offense. Appellant was not prejudiced by the consolidation of these matters.

Trial Court Opinion, 5/26/22, at 12-13 (some capitalization altered).

The record supports the trial court's rationale. **See**, **e.g.**, **Janda**, 14 A.3d at 156-57 (affirming trial court's consolidation of nine separate, similar burglaries of residences, as the evidence in each case was relevant to prove, *inter alia*, defendant's "common scheme" of burglarizing homes, "the burglarized homes were located within approximately a five mile to six mile radius of one another[,]" and each home "was situated such that it was largely obscured from view from the vantage point of the road." (citation omitted)); **Commonwealth v. Collins**, 703 A.2d 418, 423 (Pa. 1997) ("Where a trial concerns distinct criminal offenses that are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence."); **accord Commonwealth v. O'Brien**, 836 A.2d 966, 969-70 (Pa. Super. 2003) (holding trial court erred in denying Commonwealth's request to introduce at trial evidence of defendant's prior crimes, which proved a common scheme or plan by defendant, despite the fact that the crimes "are

not sufficient to establish a **signature** for [defendant]." (emphasis in original)).

Furthermore, Appellant's reliance on **Brown**, **supra**, is unavailing. **See** Appellant's Brief at 35-37. **Brown** held that the trial court erred in consolidating indictments due to a lack of correlation in details between the charges. **See Brown**, 505 A.2d at 299-300. The Commonwealth charged Brown with robbery and conspiracy related to his robbery of televisions from two different residences in the suburbs of Pittsburgh. **Id.** at 296. Brown committed the second robbery approximately four months after the first. **Id.** Prior to trial, the defense objected to consolidation of the separate indictments. **Id.** at 296, 300. This Court concluded the trial court abused its discretion in denying Brown's "request for separate trials where … the charges were for offenses which were unconnected in time and similar only in that television sets were stolen during daylight hours from ransacked dwelling houses." **Id.** at 300. We explained:

> Although the offenses were of the same class, there was not that "high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others." **Commonwealth v. Bastone**, … 396 A.2d 1327, 1329 ([Pa. Super.] 1979). The separate crimes were not "so nearly identical in their unusual or distinctive aspects as to bear the 'signature' or be the 'handiwork' of the same person." **Commonwealth v. Kasko**, … 469 A.2d [181,] 184-185 [(Pa. Super. 1983).]

**Brown**, 505 A.2d at 299-300 (citations modified). Accordingly, we vacated Brown's judgment of sentence and remanded for separate trials. **Id.** at 300.

In this case, the Commonwealth correctly argues that **Brown** is inapposite where "the common scheme evidence was offered to prove [Appellant's] **intent** to commit the crimes," as opposed to his identity:

> [T]he issue in **Brown** pertained to the accused's identity. … As discussed in **Brown**, a "signature crime" is necessary when the evidence was offered to prove the defendant's **identity** as the perpetrator by excluding all others. **Id.** A signature crime may be necessary where it is the sole evidence of identity, but not where there is other evidence directly linking the accused to the crime. **Commonwealth v. Einhorn**, 911 A.2d 960, 968 (Pa. Super. 2006)[.]

Commonwealth Brief at 9 (emphasis added).

We are also unpersuaded by Appellant's reliance on **Ross**, **supra**, in which the defendant murdered and mutilated the victim. The trial court in **Ross** permitted the Commonwealth to introduce evidence from three of the defendant's former paramours describing the defendant's prior sexual and/or physical abuse. **Ross**, 57 A.3d at 99-100. Unlike the instant case, the **identity** of the perpetrator was at issue. **Id.** at 103 (holding that testimony from the defendant's former paramours "did not establish any particular *modus operandi* or other pattern of conduct … so unusual and distinct as to constitute a 'signature' **identifying** defendant as the victim's killer." **Id.** (emphasis added); **see also id.** at 104 (finding defendant's conduct in the respective incidents was "profound[ly] dissimilar[].").

This Court, in concluding the trial court erred in admitting the testimony of defendant's ex-paramours to prove defendant's **identity** as the victim's killer, noted that defendant's abusive behavior in the prior incidents was

"triggered … by different causes" and involved different facts. *Id.* at 102. Also, the defendant's conduct with the murder victim "involved a level of **brutality** far in excess of the incidents of physical and/or sexual abuse described by" defendant's former paramours. *Id.* at 103 (emphasis in original). We also emphasized that all three of the defendant's former paramours had lived with the defendant and claimed domestic abuse, but the murder of the victim, "in significant contrast, did not involve domestic abuse" and there was no "testimony at trial [] that [defendant and the murder victim] … had even met each other before that evening." *Id.*

Based on the foregoing, we discern no manifest abuse of discretion by the trial court in consolidating the three cases where Appellant received a fair trial and failed to prove that he suffered undue prejudice. *See Lively*, *supra*; *Janda*, *supra*.

Judgments of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: 5/25/2023