J-S39026-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SEMAJ NOLAN | : | |
| Appellant | : | No. 2556 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005123-2022

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SEMAJ NOLAN | : | |
| Appellant | : | No. 2557 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 27, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005124-2022

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED APRIL 15, 2026**

Appellant Semaj Nolan appeals from the judgment of sentence imposed after a jury convicted him of attempted murder, aggravated assault, and two counts each of first-degree murder, conspiracy to commit first-degree murder, carrying a firearm without a license, carrying a firearm in public in Philadelphia, possession of a firearm by a minor, and possession of an

instrument of crime (PIC).[1]  On appeal, Appellant argues that the trial court

erred by consolidating his cases for trial.  After review, we affirm.

The trial court summarized the facts of the case as follows:

On May 17, 2021, a black Toyota Camry was stolen from the area of 34th Street and Lancaster Avenue [in Philadelphia].

On May 20, 2021, that black Toyota Camry was used in the theft of a green 2021 Subaru Forester from the 400 block of Queen Street.  A camera installed on the front of a home in the area where the Forester was stolen captured a video of the theft.  The thieves exited the black 2021 Toyota Camry.

On May 25, 2021, at 7:29 pm, at 39th and Poplar Streets, there was a report of gun shots fired.  Lieutenant Vincent Perone arrived at the scene and found an eighteen-year-old shooting victim, later identified as Nasir Marks, and transported Nasir Marks to the hospital where he later died.  Police collected eight (8) []9 millimeter Fired Cartridge Casings [(FCCs)], eleven (11) [.]40 caliber [FCCs], and one projectile.  Ring camera footage collected from the scene depicts a green Subaru Forrester fleeing the scene following the sound of gunshots.

Thirty minutes after the report of a shooting at 39th and Poplar Streets, at 7:59 pm, Police responded to a radio call for a report of a shooting at 2548 N. Sydenham Street.  When Police arrived at the shooting location, officers located a fifteen-year-old shooting victim, later identified as [KP], lying on the highway suffering from multiple gunshot wounds to his torso and head.  Responding officers transported [KP] to the hospital where he later died.

A subsequent investigation revealed a second victim, later identified as [SF], had also been shot in the left leg, upper right shoulder blade, and tail bone.

At the scene of the Sydenham Street shooting, Police recovered 39 pieces of ballistics evidence, including (34) [FCCs].  Three (3) [FCCs] were identified as having been fired from a .40 caliber

_____

[1] 18 Pa.C.S. § 901(a), 2702(a)(1), 2502(a), 903, 6106(a)(1), 6108, 6110.1(a), and 907(a), respectively.

weapon, and (31) [FCCs] were identified as having been fired from a 9 mm weapon. Video surveillance was recovered from the area of the Sydenham Street shooting. It depicts a GMC driving up Sydenham Street before stopping suddenly. Four individuals are seen walking from where the vehicle stopped, with one individual, later identified as Zaire Crawford running up close to the area where decedent [KP] was found and shooting towards that area from a close distance. Also identified in the video both before and after the shooting occurred was [SF].

On June 3, 2021, at 12:17 am, Philadelphia police responded to a shooting at 1820 W. Diamond Street. When Police arrived at the location, they observed a black Toyota Camry, unattended, with bullet holes in both sides and blood stains on the interior. Detectives recovered the Toyota Camry and had it towed to the police garage.

On June 3, 2021, at 12:36 am, co-defendant Zaire Crawford walked into Penn-Presbyterian Hospital with a gunshot wound to his left arm. Co-Defendant Crawford told investigators that he was the front passenger in the Toyota Camry and stopped at a red light on Diamond Street when he was shot. Crawford stated that he did not see the shooter. Crawford would not identify the driver of the Camry.

Detectives executed a search warrant on the Toyota Camry. Detectives recovered two cellular phones from the inside of the Camry, a blue iPhone 12 and a black iPhone 7. A Pennsylvania state identification card for Zaire Crawford was discovered in-between the case holding the black iPhone7 and the black iPhone 7 itself.

Search warrants were executed on each of the iPhones collected from the Toyota Camry. The data extractions from these phones revealed that the iPhone 7 was registered to a phone number associated with Zaire Crawford and that the iPhone 12 was registered to a phone number associated with [Appellant]. Philadelphia Police also secured tower dump data from the time and areas of both the Poplar Street shooting scene and the Sydenham Street shooting scene. That tower dump data revealed that the phones belonging to [Crawford and Appellant] were traveling together in the areas of both the Poplar Street shooting scene and the Sydenham Street shooting scene at the times each shooting occurred.

The stolen Subaru Forrester was located on the 2200 block of Mole Street on June 22, 2021. The vehicle had exterior damage. Visible through the window were [FCCs] and what appeared to be a projectile. Several pieces of ballistics evidence, including 9 mm [FCCs] and a live cartridge was recovered from the Forrester. Two latent prints were lifted from the rear-view mirror. A stipulation was entered by and between counsel for [Appellant] that the Philadelphia Police Department's latent print examiner identified one of the prints collected from the Forrester as a palm print matching [Appellant]. The other print was not identifiable.

In September of 2021, a male named Bryson Greggory was arrested for auto theft and was transported to the auto theft unit of the Philadelphia Police Department, where he informed detectives that he had information related to two murders. Mr. Greggory was then transported to the homicide detectives, where he was interviewed and gave a statement, which was later corroborated by ballistics evidence, video surveillance evidence and an analysis of phone data.

Mr. Greggory testified that at the time of the murders, he had known Zaire Crawford, [Appellant] and Yaseam Miles for approximately a year or two through a family member. Mr. Greggory did not live in Philadelphia but came down for summers.

Mr. Greggory stated that Zaire Crawford told him that he, along with [Appellant] and Yaseam Miles "bagged two bodies in one day." The first murder was at the intersection of 39th and Poplar Street. Zaire Crawford had told Mr. Greggory they drove a stolen Subaru to the intersection of 39th and Poplar Streets, [Appellant] started shooting first from the car, and when the decedent fell, Zaire Crawford got out of the vehicle and stood over top of the decedent firing at him. Zaire Crawford then told Mr. Greggory that they switched vehicles, from the Forrester to a GMC Denali and drove to 15th Street and some street that began with the letter "S", where they murdered a person [known by a nickname consistent with KP's first name]. Crawford saw the decedent, hopped out of the vehicle, and began chasing him. When the decedent fell, he shot him in the face and head.

Mr. Greggory was shown surveillance video from the scene at Sydenham Street and identified one of the individuals as Zaire Crawford by the way he ran and the extended clip he was holding. Mr. Greggory was also able to identify Yaseam Miles by the particular pair of shoes he was wearing.

Mr. Greggory also testified that Zaire Crawford said that he had three bullets left in the chamber from the Poplar Street shooting and used those bullets in the Sydenham shooting.

Mr. Greggory testified that all three Defendants said that Zaire Crawford was driving somewhere in North Philly in a stolen Toyota Camry and somebody started shooting through the car, [Appellant] was shot, and the car crashed.

Philadelphia Police analyzed the ballistics evidence collected from both the Poplar Street and Sydenham Street shooting scenes, as well as the ballistics evidence collected from the Subaru Forester. Officer Andrejczak determined that the [.]40 caliber [FCCs] collected from the Sydenham Street shooting scene matched the [.]40 caliber [FCCs] collected from the Poplar Street scene. Officer Andrejczak also determined that one group of 9 mm [FCCs] matched the 9mm [FCCs] collected from the Poplar Street shooting scene, as well as the 9mm [FCCs] collected from the Subaru Forrester.

Moreover, Officer Andrejczak compared a [.]40 caliber FCC collected from the Sydenham Street shooting scene to an FCC test fired by Philadelphia Police from a [.]40 Caliber weapon that was recovered on June 9, 2022 from an unrelated event and concluded that the [.]40 caliber [FCCs] collected from the Sydenham Street shooting and Poplar Street shooting scenes were fired from the same [.]40 caliber firearm that was test fired by Philadelphia Police.

[Emails] recovered from the phone extraction revealed that shortly after the murders, co-defendant Crawford was attempting to sell a Glock (22) [.]40 caliber weapon with a (30) round extended magazine.

Trial Ct. Op., 12/30/24, at 1-6 (footnotes omitted and some formatting altered).

Appellant was arrested and charged with various offenses at two docket numbers. At Docket No. 5123 of 2022, Appellant was charged with murder, conspiracy, carrying a firearm without a license, carrying a firearm in public in Philadelphia, possession of a firearm by a minor, and PIC in relation to the

shooting of Nasir Marks. At Docket No. 5124 of 2022, Appellant was charged with aggravated assault, attempted murder, murder, conspiracy, carrying a firearm without a license, carrying a firearm in public in Philadelphia, possession of a firearm by a minor, and PIC in relation to the shootings of KP and SF.

On April 3, 2023, the Commonwealth filed a notice of joinder seeking to consolidate the two cases for trial. Appellant filed a response opposing consolidation on April 13, 2023. On April 14, 2023, the trial court granted the Commonwealth's motion for consolidation.

The case proceeded to a jury trial on April 24, 2023. At the conclusion of trial, the jury found Appellant guilty of the above stated charges. The trial court sentenced Appellant to an aggregate sentence of thirty-five years to life incarceration on September 27, 2023.[2] Appellant did not file post-sentence motions.

_____

[2] Specifically, the trial court imposed concurrent sentences of thirty-five years to life incarceration for each of the first-degree murder convictions, ten to twenty years' incarceration for each of the conspiracy convictions, three and a half to seven years' incarceration for each of the carrying a firearm without a license convictions, and ten to twenty years' incarceration for attempted murder. *See* Sentencing Order Docket No. 5123-22, 10/5/23; Sentencing Order Docket No. 5124-22, 10/5/23. The trial court imposed no further penalty on Appellant's convictions for carrying a firearm in public in Philadelphia, possession of a firearm by a minor, and PIC. *See* Sentencing Order Docket No. 5123-22, 10/5/23; Sentencing Order Docket No. 5124-22, 10/5/23. Further, the trial court noted that Appellant's conviction for aggravated assault merged with his conviction for attempted murder for sentencing purposes. *See* Sentencing Order Docket No. 5124-22, 10/5/23.

Appellant filed a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issue on appeal:

Did the trial court err by consolidating [Appellant's] two distinct cases into one trial where the cases did not satisfy an exception to the bar on other crimes evidence, and consolidation tainted the jury with highly prejudicial propensity evidence?

Appellant's Brief at 3.

This Court has previously discussed the law on consolidation and severance as follows:

Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant. It is the appellant's burden to establish prejudice.

The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence.

Our Supreme Court has stated that while evidence of other crimes committed by a defendant is generally not admissible to show his criminal propensity, such evidence is relevant and admissible to establish the perpetrator's identity, or the existence of a common scheme or plan.

. . . Pennsylvania Rule of Criminal Procedure 582(A)(1) provides that distinct offenses which do not arise out of the same act or transaction may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion, or the offenses charged are based on the same act or transaction. If the trial court finds that the evidence is admissible and the jury can separate the charges, the court must also consider whether consolidation would unduly prejudice the defendant.

Pennsylvania Rule of Criminal Procedure 583 provides a court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

We explained, the "prejudice" of which Rule 583 speaks is that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

Finally[, r]eading [R]ules 582 and 583 together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: 1. whether the evidence of each of the offenses would be admissible in a separate trial for the other; 2. whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, 3. whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Gray*, 296 A.3d 41, 47-48 (Pa. Super. 2023) (citations omitted and some formatting altered).

Additionally, regarding the admissibility of evidence of other crimes, this Court has stated:

> Bad acts evidence is inadmissible to prove a defendant acted in conformity with those acts or to demonstrate a criminal propensity. However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. This list is non-exclusive. Indeed, prior to the codification of our rules of evidence, our Supreme Court set forth

- 8 -

the following list of exceptions to the general prohibition against bad acts evidence:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).

**Commonwealth v. Billa**, 521 Pa. 168, 555 A.2d 835, 840 (1989) (citing **Commonwealth v. Lark**, 518 Pa. 290, 543 A.2d 491, 497 (1988)).

Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, i.e., the *res gestae* exception. . . .

In **Lark**, . . . our Supreme Court explained,

> the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, i.e., evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

*Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012) (some

citations omitted and some formatting altered).[3]

Here, the trial court addressed the consolidation of Appellant's cases as

follows:

> In the instant matter, the evidence presented in each case would be admissible to demonstrate the history and natural development of the facts of the other case. The evidence for each murder is so tightly interwoven that one could not establish the facts of one murder without establishing the facts of the other.
>
> The events begin on May 17, 2021, when a black 2021 Toyota Camry was stolen from the area of 34th Street and Lancaster Avenue.
>
> Next, a green Subaru Forrester was stolen on 5/20/21. A video which captured the theft of the Subaru shows the thief alighting from a newer model black Camry. On 5/25/21, at approximately 7:29 pm, 18-year-old Nasir Marks was shot to death on 39th and Poplar. The shooter was in a green Subaru. Thirty minutes later, 15-year-old [KP] was shot to death on the 2500 block of Sydenham Street.
>
> Video surveillance was recovered from the area of the Sydenham Street shooting which depicts a GMC driving up Sydenham Street before stopping suddenly. Four individuals are seen walking from where the vehicle stopped, with one individual, later identified as Zaire Crawford running up close to the area where [KP] was found and shooting towards that area from a close distance.

_____

[3] We note that our Supreme Court recently decided a case regarding consolidation and bad acts evidence. *See Commonwealth v. Walker*, 350 A.3d 54 (Pa. 2026). Since that case dealt with the common plan, scheme or design exception to the bar on admission of bad acts evidence, which is not at issue in this case, we do not believe the *Walker* decision is implicated here. *See id.* at 62 (stating "[t]he matter before us concerns another judicially-recognized exception to [the bar on the admission of bad acts evidence, which occurs] when the other bad acts evidence demonstrates a defendant's common plan, scheme or design").

- 10 -

On June 3, 2021, at 12:17 am, Philadelphia police responded to a shooting at 1820 W. Diamond Street. When Police arrived at the location, they observed a black Toyota Camry, unattended, with bullet holes in both sides and blood stains on the interior. Co-defendant Crawford was reported to be at Presbyterian Hospital suffering from a gunshot wound. When interviewed by detectives, he admitted that he was a passenger in the stolen Toyota Camry when he was shot but did not identify the driver. Two phones were found in the Camry; one belonged to the co-defendant, and the other belonged to [Appellant]. It was determined that both phones were traveling together using cell towers in the vicinity of both murders at the time of the murders.

The stolen green Subaru Forrester was located on the 2200 block of Mole Street on June 22, 2021. Several pieces of ballistics evidence, including 9 mm [FCCs] and a live cartridge was recovered from the Forrester. Two latent prints were lifted from the rear-view mirror; one of which matched [Appellant's] palm print.

Philadelphia Police analyzed the ballistics evidence collected from both the Poplar Street and Sydenham Street shooting scenes, as well as the ballistics evidence collected from the Subaru Forester. It was determined that the [.]40 caliber [FCCs] collected from the Sydenham Street shooting scene matched the [.]40 caliber [FCCs] collected from the Poplar Street scene. It was also determined that one group of 9 mm [FCCs] from Sydenham Street matched the 9 mm [FCCs] collected from the Poplar Street shooting scene, as well as the 9 mm [FCCs] collected from the Subaru Forrester.

The facts establish that the evidence relating to each incident would tend to show "motive, opportunity, intent, preparation, plan, knowledge or identity" relevant to the other incident.

Therefore, the court did not err in consolidating the cases.

Trial Ct. Op., 12/30/24, at 10-11.

After our review, we discern no abuse of discretion by the trial court in consolidating the case at Docket No. 5123 of 2022 with the case at Docket No. 5124 of 2022. *See Gray*, 296 A.3d at 47.

Evidence of each case would be admissible in a separate trial for the other to show the history and natural development of the facts of the cases. *See Gray*, 296 A.3d at 48; *see also Brown*, 52 A.3d at 325-26. As trial court points out, the homicides at each docket number occurred within thirty minutes of each other. *See* Trial Ct. Op., 12/30/24, at 2; *see also* N.T., 4/25/23, at 126-29; N.T., 4/26/23, at 47-51.

Further, the evidence related to the green Subaru and black Toyota Camry was essential to showing the history and natural development of the facts of the cases. The green Subaru used to flee the scene of the murder of Nasir Marks was stolen by individuals in a black Toyota Camry. *See* N.T., 4/25/23, at 188-89. Approximately a week after both homicides, police responded to a shooting where they found a black Toyota Camry with bullet holes and two phones inside. *See* N.T., 4/25/23, at 198-99; N.T., 4/26/23, at 166-69. One of those phones was associated with Appellant. *See* N.T., 4/25/23, at 204, N.T., 5/1/23, at 154-55. A cell site analysis of that phone showed it was at the scene of the murder of Nasir Marks at the time of the murder as well as at the scene of the murder of KP at the time of the murder. *See* N.T., 4/25/23, at 198-99; N.T., 5/1/23, at 156-59, 168-71. Additionally, the green Subaru Forrester was later found abandoned with bullet holes in it and a palm print matching Appellant was obtained from the vehicle. *See* N.T., 5/1/23, at 204-06. Further, ballistics evidence collected from the Subaru Forrester matched ballistics evidence from both the Poplar Street and

Sydenham Street shootings. *See* N.T., 4/25/23, at 197; N.T., 4/28/23, at 123-25.

Additionally, the evidence was readily capable of separation by the jury. Each homicide, of course, had different victims and one of the cases involved the shooting of two individuals. As Appellant points out, each individual homicide was investigated by a different detective and took place in a different neighborhood of Philadelphia. *See* Appellant's Brief at 14. Both homicide detectives testified about each murder separately. *See* N.T., 4/25/23, at 172-73, 182, 193-94 (reflecting that Detective Ralph Domenic was assigned to the homicide of Nasir Marks on Poplar Street); N.T., 4/28/23, at 5-7 (reflecting that Detective James Burke was assigned to the homicide of KP on North Sydenham Street). Further, the trial court instructed the jury to consider each case separately and to not consider evidence of each crime as proof of Appellant's criminal propensity. *See* N.T., 5/3/23, at 85-86; *see also Commonwealth v. Carter*, 46 EDA 2022, 2022 WL 17258649, at *6 (Pa. Super. filed Nov. 29, 2022) (unpublished mem.) (considering a cautionary instruction in concluding that the jury was capable of separating the evidence of two shootings at trial).[4] Since the two homicides were committed against different victims, in different neighborhoods of Philadelphia, and were investigated by different investigating officers who both testified at trial, the

_____

[4] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

jury was capable of separating the evidence of each crime. ***See Cousar***, 928 A.2d at 1038.

Finally, as to prejudice, Appellant argues that, while the cases were dissimilar factually, "the trial court failed to consider that the jury would misuse the evidence no matter how separate and distinct." Appellant's Brief at 31-32. Additionally, Appellant argues that "[t]he identification evidence in each case if tried separately was not weak evidence such that the probative value outweighed the prejudice by consolidating the cases." ***Id.*** at 33. Both prejudice arguments are unavailing. ***See Commonwealth v. Kurtz***, 294 A.3d 509, 534 (Pa. Super. 2023) (stating that "prejudice [for consolidation purposes] is not simply prejudice in the sense that the appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence" and that "Appellant created the sequence of events and cannot fairly now demand that the . . . matters be severed and tried in separate trials" (citations omitted and some formatting altered)); ***see also Lark***, 543 A.2d at 501 (stating that a trial court is not "required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form a part of the history and natural development of the events and offenses for which the defendant is charged").

Further, as stated above, the trial court provided a cautionary jury instruction regarding the consolidation of both cases. ***See*** N.T., 5/3/23, at 85-86. Specifically, the trial court's instruction warned the jury not to consider

the evidence of the two murders for Appellant's criminal propensity. ***See id.*** at 86. Appellant did not object to the jury instruction. ***See*** N.T., 5/1/23, at 219-20 (discussing the jury instruction regarding the consolidation of the two cases and reflecting that no objection was made). Because it is well established that juries are presumed to follow a trial court's jury instruction, we conclude that Appellant has not shown that he was prejudiced by consolidation. ***See Commonwealth v. Risoldi***, 238 A.3d 434, 458 (Pa. Super. 2020); ***see also Commonwealth v. Johnson***, 211 A.2d 100, 103 (Pa. Super. 1965) (finding no prejudice from consolidation where the trial court instructed the jury on the proper consideration of the consolidated cases and where the defendant did not request additional instructions).

Since consolidation of these cases satisfied the test for severance matters, we conclude that the trial court did not abuse its discretion in consolidating the cases for trial. ***See Gray***, 296 A.3d at 47-48. Accordingly, no relief is due.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/15/2026

- 15 -