J-A16036-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAURICE BIGELOW | : | |
| | : | |
| Appellant | : | No. 1275 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002518-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MAURICE BIGELOW | : | |
| | : | |
| Appellant | : | No. 1276 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002519-2021

BEFORE:  LAZARUS, P.J., KUNSELMAN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED OCTOBER 15, 2025**

Appellant, Maurice Bigelow, appeals from the judgments of sentence imposed in the Philadelphia County Court of Common Pleas, following his jury trial convictions of rape by forcible compulsion[1] at docket No. 2518-2021, and rape by forcible compulsion and involuntary deviate sexual intercourse

_____

[1] 18 Pa.C.S.A. § 3121(a)(1).

("IDSI") by forcible compulsion[2] at docket No. 2519-2021. We affirm.

The relevant facts and procedural history of these appeals are as follows. The Commonwealth charged Appellant with rape by forcible compulsion and IDSI at the above-mentioned docket numbers related to his separate attacks against two women, M.T.M.[3] in 2013 and E.L. in 2014. The Commonwealth sought to try both cases together, and Appellant filed a motion to sever on June 20, 2023. The trial court conducted a hearing on the motion to sever on June 21, 2023. On June 23, 2023, the court denied Appellant's motion and granted the Commonwealth's motion for consolidation. The case proceeded to a jury trial on June 27, 2023.

The trial court summarized the testimony offered at trial as follows:

Victim [M.T.M. docket No. 2518]

[M.T.M.] testified she lived in West Philadelphia and in 2013 worked as a dancer at a topless bar in North Philadelphia called The Piccadilly. (N.T. Trial, 6/27/23, at 43-44). On the afternoon of December 21, 2013, [M.T.M.] encountered [Appellant] - whom she identified at trial - at the bar. (*Id.* at 45). [Appellant] told [M.T.M.] his name was Chris. (*Id.*) They talked, danced and drank wine. (*Id.*) [Appellant] asked her to perform at a "private party." (*Id.*) A "private party" is a dance outside the club. (*Id.* at 46). They agreed to go to The Inn Hotel on the Boulevard. (*Id.*) [Appellant]

---

[2] 18 Pa.C.S.A. § 3123(a)(1).

[3] The record refers to the victim from the 2013 incident as both M.M.T. and M.T.M. During trial, the victim explained that her name had been M.M.T., however, she was recently married and used her married name (initials M.T.M.) when she was sworn as a witness. (*See* N.T. Trial, 6/27/23, at 43). For consistency throughout this decision, we refer to the victim from the 2013 incident as M.T.M.

drove her there after first stopping at a Wendy's for something to eat. (*Id.*)

[Appellant's] demeanor changed after they entered the hotel room. (*Id.* at 47). He became aggressive and ordered [M.T.M.] to take her clothes off. (*Id.*) He told her not to move or he would kill her. (*Id.* at 67). He then laid her on the bed and told her to give him oral sex, to which she said, "no." (*Id.* at 48). He then forced her to perform oral sex. (*Id.*) He then got on top of her, used his body weight to hold her down, held her knees up and her arms down, and penetrated her vagina with his penis, all against her will. (*Id.* at 48, 68). He repeated this act several times. (*Id.* at 49). At one point he choked her and told her she should not dance at The Piccadilly. (*Id.* at 50).

[M.T.M.] was scared. (*Id.* at 49). [Appellant] told her she could not leave. (*Id.* at 49, 68). He kept an arm around her. (*Id.* at 49). Every time she tried to get up and leave, he jumped up and told her she could not. (*Id.* at 49, 53, 63). She stayed in the room for four to five hours. (*Id.* at 49).

[Appellant] finally fell asleep and [M.T.M.] ran out. She went to the police, gave a statement, and underwent an examination and interview by a nurse as part of an invasive rape kit procedure that included swaps of her genitals. (*Id.* at 49, 55-56; N.T. Trial, 6/28/23, at 21, 25).

Victim [E.L. docket No. 2519]

[E.L.] testified about her encounter with [Appellant] approximately nine months later on September 4, 2014. She was 20 years old and was working as a hostess at Village Whiskey in the Old City neighborhood of Philadelphia. (N.T. Trial, 6/27/23, at 119, 138). After work, she and several co-workers went to celebrate a manager who was leaving for other pursuits. They convened at a bar called Cavanaugh's at approximately 10 pm. (*Id.* at 120). She had too much to drink there, and, when her group left, her manager asked her for her home address and flagged down a taxi to take her home alone. (*Id.* at 119-20, 141).

At some point, she told the cab to stop so she could walk

the rest of the way. (*Id.* at 121). She realized, however, she did not know where she was. (*Id.*) She texted her roommate she was scared and lost. (*Id.*) A dark vehicle then pulled up. The driver asked her if she needed a ride. (*Id.* at 122). She replied "yes" and got in. (*Id.*) He offered to take her home and also offered takeout food. (*Id.* at 122, 154-55). He then asked her if she wanted to hang out, and, to be polite, she said "yeah." (*Id.*) She then passed out. (*Id.* at 123).

When she awoke, the driver was on top of her raping her. (*Id.*) Her shorts were pulled down. (*Id.* at 124). His penis penetrated her vagina. (*Id.* at 125). She started to scream. (*Id.* at 123). He told her he would kill her if she didn't stop yelling. (*Id.*) He was pinning her down to the front passenger seat with his hands and torso. (*Id.* at 124). He put his hands around her neck and said he would kill her if she did not shut up. (*Id.* at 125). He then forced her around so that she was facing the seat and put his penis in her anus. (*Id.* at 126). She wanted none of this and never consented. (*Id.* at 125-26).

When [Appellant] stopped raping her, he got back into the driver's seat and started to drive. [E.L.] was in shock. The events started to sink in. She started screaming again as loud as she could and said to [Appellant]: "You just raped me," to which he replied: "I know." (*Id.* at 126). When she kept screaming, he pushed her out of the car. (*Id.* at 127-28). Minus one shoe, she immediately dialed 911. (*Id.*) The police arrived and took her to the Special Victims Unit, where [E.L.] gave a statement to a detective and submitted to a probing interview by a nurse and an invasive examination that included swaps of her genitals and anus. (*Id.* at 128-34, 150-51; N.T. Trial, 6/28/23, at 32-36).

The rape kit report included an inventory of [E.L.]'s injuries. She had bruises, scratches, redness, fissures and tears to her wrists, neck, back and genitals. (N.T. Trial, 6/27/23, at 129-34; N.T. Trial, 6/28/23, at 32-36). Bruises and scratches were identified on her neck and lower extremities. (N.T. Trial, 6/28/23, at 32). Redness associated with "blunt force" and scratches on her upper extremities. (*Id.* at 32-33). Scratches on her chest. (*Id.* at 32). Redness associated with "blunt force," "abrasive contact," and "small

tears" on the mans pubis-the pubic area just above the genitalia-and labia majora. (*Id.* at 33-34). The rape kit also recorded a statement by [E.L.] that [Appellant] had threatened to kill her when she screamed and begged him to stop. (*Id.* at 30-31).

(Trial Court Opinion, dated 9/3/24, at 3-5) (record citation formatting provided). The Commonwealth introduced evidence that law enforcement received a match from the rape kits in 2019 indicating that Appellant's DNA matched the DNA swabs taken from both M.T.M. and E.L. (N.T. Trial, 6/27/23, at 159).

Appellant testified in his own defense at trial, claiming that both encounters were consensual. With respect to M.T.M., Appellant claimed that she offered to have sex with him for money, and that he felt cheated when she did not follow through. (N.T. Trial, 6/28/23, at 131-41, 170). Appellant denied raping her. (*Id.* at 142). Appellant also asserted the defense of consensual sex for hire concerning his encounter with E.L. Appellant claimed that he saw E.L. on the street corner and paid her $100. Appellant testified that he drove them to a secluded area where they had consensual sex. Appellant denied anal sex and insisted that the trauma to her pelvic area was the result of misdirected thrusts during consensual vaginal sex. (*Id.* at 145-51). Appellant argued that E.L. fell asleep after they had consensual sex and that he had to pat on her leg to wake her up. After she awoke, Appellant claimed she screamed "what did I do" and asked him to drive her back to where he had picked her up. (*Id.* at 159). Appellant denied admitting that

he raped E.L. (*Id.* at 160).

At the close of trial, at docket No. 2518, the jury found Appellant guilty of rape and not guilty of IDSI with respect to M.T.M.; at docket No. 2519, the jury found Appellant guilty of both rape by forcible compulsion and IDSI with respect to E.L. On December 4, 2023, the court sentenced Appellant to 6-12 years of incarceration at docket No. 2518. At docket No. 2519, the court sentenced Appellant to an aggregate 90–180 months of incarceration, consecutive to the sentence at docket No. 2518.

Appellant filed a timely post-sentence motion, which the court denied by operation of law on April 15, 2024. Appellant filed timely notices of appeal at each underlying docket on May 6, 2024. Pursuant to the court's order, Appellant filed a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal on May 28, 2024. On November 4, 2024, this Court consolidated Appellant's appeals *sua sponte*.

Appellant raises the following two issues on appeal:

> I. Did the [trial] court err in granting consolidation of Appellant's two unrelated rape cases for trial where evidence of each of the offenses would not have been admissible in separate trials for the other pursuant to Pa.R.E. 404(b)?
>
> II. Was the evidence sufficient to sustain Appellant's convictions for rape and [IDSI] where the evidence failed to establish that [A]ppellant used forcible compulsion to induce the complainants to submit to sexual activity or that he intentionally, knowingly or recklessly disregarded their lack of consent.

(Appellant's Brief at 4) (unnecessary capitalization omitted).

In his first issue on appeal, Appellant contends the trial court abused its discretion when it granted the Commonwealth's motion to consolidate his two cases for trial. Specifically, Appellant argues that the cases involved separate victims and distinct, unrelated allegations. Appellant insists that had the issues been tried separately, evidence of each of the offenses would be inadmissible in trial for the other. Appellant contends that the court misapplied the common plan or scheme exception and insists that the only similarities between the two cases were that the victims were women in their twenties who were subjected to vaginal intercourse. Appellant suggests that other insignificant similarities between the two cases were insufficient to demonstrate the existence of a common plan or scheme, and that the trial court should have only considered factors that distinguished Appellant's behavior from run-of-the-mill common criminals. Appellant submits that vaginal intercourse with women in their twenties is not enough of a similarity to apply the exception. Moreover, Appellant complains that consolidation of the cases for trial unquestionably prejudiced him. Appellant suggests that the jury did not find M.T.M. credible because it acquitted Appellant of IDSI, and would not have convicted him of raping M.T.M. in the absence of the other evidence that Appellant was accused of the forcible rape of E.L. Appellant concludes the trial court abused its discretion in consolidating these two cases for trial, and this Court must grant relief. We disagree.

Our standard of review of a challenge to consolidation is well settled:

"Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant." **Commonwealth v. Knoble**, 188 A.3d 1199, 1205 (Pa.Super. 2018) (quoting **Commonwealth v. Wholaver**, 605 Pa. 325, 989 A.2d 883, 888 (2010)).

Pennsylvania Rule of Criminal Procedure 582 provides, in relevant part, that offenses charged in separate indictments or informations may be tried together if:

> (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion[.]

Pa.R.Crim.P. 582(A)(1)(a). Further, the court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.P. 583. This Court has explained:

> Our Supreme Court has established a three-part test, incorporating these two rules, for deciding the issue of joinder versus severance of offenses from different informations. The court must determine
>
> > whether the evidence of each of the offenses would be admissible in a separate trial for the other; whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, whether the defendant will be unduly prejudiced by the consolidation of offenses.

**Commonwealth v. Thomas**, 879 A.2d 246, 260 (Pa.Super. 2005), *appeal denied*, 605 Pa. 685, 989 A.2d 917 (2010) (some internal citations and quotation marks omitted).

- 8 -

In general, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, bad acts evidence may be admissible under the common plan or scheme exception when the prior acts are so distinctive and similar that they constitute a signature of the defendant proving identity or a common scheme. As this Court has explained:

> Another recognized exception to the rule prohibiting admission of evidence of other crimes or bad acts is for evidence of
>
> > a common scheme, plan[,] or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial[—]in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.
> >
> > [E]vidence of other crimes is said to be admissible to prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here[,] much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.
>
> ***Commonwealth v. Roney***, 622 Pa. 1, 79 A.3d 595, 606 (2013) (citations, quotation marks, and brackets omitted).
>
> Evidence of a common scheme, plan, or design may be relevant to establish any element of a crime. ***See Commonwealth v. Einhorn***, 911 A.2d 960, 967 (Pa.Super. 2006)[, *appeal denied*, 591 Pa. 723, 920 A.2d

831 (2007)]. When considering whether the common scheme, plan, or design exception applies, the trial court must initially examine the details and surrounding circumstances of the other act(s) and the current criminal incident to determine whether the evidence reveals the sufficient similarities and details in the acts committed. *See Commonwealth v. O'Brien*, 836 A.2d 966, [969-71] (Pa.Super. 2003)[, *appeal denied*, 577 Pa. 695, 845 A.2d 817 (2004)] (noting that relevant factors for consideration in determining applicability of common scheme, plan, or design exception include: habits or patterns of action or conduct undertaken by perpetrator to commit crime, and time, place, and types of victims typically chosen by perpetrator).

We have previously specified certain factors that the court should consider when evaluating the similarities between the acts, including the elapsed time between the acts, the geographical proximity of the locations of the acts, and the manner in which the acts were performed or committed. *See Commonwealth v. Cain*, 29 A.3d 3, 7 (Pa.Super. 2011); *see also Commonwealth v. Newman*, 528 Pa. 393, 598 A.2d 275, 279 (1991) (commonality of roles and situs establishes common design and court must evaluate shared details, including perpetrator's actions, location of acts, and commonality of relationship between defendant and victims).

*Commonwealth v. Carter*, 320 A.3d 140, 149–50 (Pa.Super. 2024). *See also Commonwealth v. Tyson*, 119 A.3d 353, 360 (Pa.Super. 2015) (holding that appellee engaged in common plan or scheme in two cases where victims were females in their twenties, appellee was guest in victims' home, appellee was aware victims were in weakened state, victims lost consciousness, and each victim awoke to find appellee having vaginal intercourse with her).

Prejudice, for purposes of consolidation, is

that which would occur if the evidence tended to convict [the defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth. v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010). The party appealing the grant of consolidation bears the burden of establishing prejudice. ***Commonwealth v. Gray***, 296 A.3d 41, 47 (Pa.Super. 2023), *appeal denied*, ___ Pa. ___, 307 A.3d 1197 (2023).

Instantly, the trial court explained its rationale for granting the Commonwealth's motion to consolidate as follows:

There are numerous similarities between the two cases at issue that show a common scheme or method of operation and lack of mistake of fact on behalf of Appellant. The attacks occurred less than a year apart. Both victims were women in their mid-20s and did not know Appellant prior to the attacks. Both victims were in vulnerable positions at least in part because Appellant lured them into private, confined spaces under false pretenses and offered to get them something to eat. Appellant threatened both victims, and both attacks included vaginal rape. Appellant was identified as the suspect in both cases years later based on a CODIS match. Based on this, [the trial court] concluded that this information could be allowed in each case due to the fact that they were … strangers. And [had] the same basic motive, [for] identification….

It is also clear from the record that Appellant was not prejudiced by the joinder and the evidence for each offense was easily separated by the jury. Both victims gave detailed testimony during trial, and separate DNA evidence was presented for each victim. Moreover, the Commonwealth

- 11 -

explicitly stated in its opinion statement that "[Y]ou're hearing about these cases together at the same time not because we are suggesting to you that just because one happened so did the other. That's not what we're doing." Most importantly, the jury found Appellant not guilty of IDSI [at docket No. 2518] and guilty of IDSI [at docket No. 2519], showing that it understood the differences between the two cases. Therefore, Appellant was not prejudiced by the joinder of these matters for trial.

(Trial Court Opinion, dated 8/30/24, at 3-5) (record citations and quotation marks omitted; some bracketing in original).

Initially, we agree with the trial court's conclusion that evidence relevant to the rape of M.T.M. and the rape and IDSI of E.L. would be admissible in the trial of each case for the permissible purpose of proving Appellant's common scheme, plan or design. *See Carter, supra*. Considering the relevant factors, there are significant similarities between the rapes of M.T.M. and E.L. including that: (1) they both involved women in their mid-20s; (2) neither victim knew Appellant beforehand; (3) Appellant lured both victims into private spaces; (4) Appellant offered both victims fast food prior to the attack; (5) both attacks included forcible vaginal rape; and (6) Appellant threatened both victims. Based on these factors, we conclude that "[t]he factual overlap between the two incidents goes beyond the commission of crimes or conduct 'of the same general class.'" *See Tyson, supra* at 360. Rather than merely showing that Appellant sexually assaulted two different women in their twenties, the evidence reflects a clear pattern, sufficiently similar to satisfy the common plan or scheme exception to Rule 404. *See id. See also Carter,*

*supra*.

Additionally, evidence of the other attacks should not be shielded from the factfinder merely because it is harmful to Appellant; the question is whether the evidence would be **unduly** prejudicial. *See Thomas, supra*. Further, we note that the court issued a cautionary instruction to advise the jury of the limited purpose of the evidence and to clarify that the jury cannot treat evidence of one offense to prove Appellant's bad character and guilt of the other offense. Finally, the presentation of the evidence at trial made it clear for the jury to distinguish between the charges, as demonstrated by the jury's conclusion that Appellant was not guilty of IDSI with respect to M.T.M. Thus, Appellant failed to show he suffered prejudice as a result of consolidation, and the court did not abuse its discretion in denying Appellant's severance motion and granting the Commonwealth's motion to consolidate the cases for trial. *See Gray, supra*. *See also Dozzo, supra*. Appellant's first issue is meritless.

In his second issue, Appellant argues that the evidence was insufficient to support his convictions. Appellant claims that the Commonwealth failed to prove the *mens rea* of the offenses. Specifically, Appellant contends that the Commonwealth failed to show that he used forcible compulsion to induce either victim to engage in sexual activity or that he intentionally, knowingly or recklessly disregarded their lack of consent. With respect to M.T.M., Appellant insists that M.T.M. never verbalized her non-consent, nor did he

compel her to submit by force or the threat of force. With respect to E.L., Appellant submits that the Commonwealth failed to produce evidence that Appellant used force to compel E.L. to engage in sexual intercourse against her will. Appellant suggests that the Commonwealth's evidence that E.L. regained consciousness to discover Appellant having sexual intercourse with her did not establish that she submitted to his sexual advances due to force. Appellant concludes the evidence was insufficient to support his convictions in both cases on these grounds, and this Court must grant relief. We disagree.

A challenge to the sufficiency of the evidence "presents a pure question of law and, as such, our standard of review is *de novo*, and our scope of review is plenary." ***Commonwealth v. Santiago***, 294 A.3d 482, 485 (Pa.Super 2023).

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence.

- 14 -

Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines rape, in pertinent part, as follows:

**§ 3121. Rape**

**(a) Offense defined.**—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1) By forcible compulsion[.]

18 Pa.C.S.A. § 3121(a)(1). The Crimes Code defines IDSI, in pertinent part, as follows:

**§ 3123. Involuntary deviate sexual intercourse**

**(a) Offense defined.**—A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant:

(1) by forcible compulsion[.]

18 Pa.C.S.A. § 3123(a)(1).

This Court has explained:

Both statutes require proof that a defendant engaged in a form of intercourse, as well as an additional element. "Sexual intercourse," used in Section 3121, is defined: "In addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission

- 15 -

is not required." 18 Pa.C.S.A. § 3101. "Deviate sexual intercourse," used in Section 3123, is: "Sexual intercourse per os or per anus between human beings," as well as intercourse with an animal and certain penetration with a foreign object. *Id.*

*Commonwealth v. Banniger*, 303 A.3d 1085, 1092 (Pa.Super. 2023)

(footnote omitted).

> Under Subsections 3121(a)(1) and 3123(a)(1), the Commonwealth must prove that the defendant engaged in intercourse "by forcible compulsion." By statute, forcible compulsion includes "[c]ompulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied." 18 Pa.C.S.A. § 3101. Thus, in addition to "sheer physical force or violence," forcible compulsion encompasses "an act of using superior force, physical, moral, psychological or intellectual[,] to compel a person to do a thing against that person's volition and/or will." *Commonwealth v. Gonzalez*, 109 A.3d 711, 720-21 (Pa.Super. 2015) (citing *Commonwealth v. Ables*, [590 A.2d 334, 337 (Pa.Super.1991)]). For these sexual offenses, the object of the force is "to compel a person to engage in sexual intercourse [or deviate sexual intercourse] against that person's will." *Commonwealth v. Rhodes*, 510 Pa. 537, 510 A.2d 1217, 1226 (1986).
>
> Whether a defendant used forcible compulsion depends on the totality of the circumstances, including this non-exhaustive list of factors:
>
>> the respective ages of the victim and the accused, the respective mental and physical conditions of the victim and the accused, the atmosphere and physical setting in which the incident was alleged to have taken place, the extent to which the accused may have been in a position of authority, domination or custodial control over the victim, and whether the victim was under duress.
>
> *Id.* Our courts have not specified every set of circumstances that can show forcible compulsion, which turns on the facts of each case. *Id.* at 1226.

- 16 -

*Banniger, supra* at 1092–93. Further, "the uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." *Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa.Super. 2005) (quoting *Commonwealth v. Bishop*, 742 A.2d 178, 189 (Pa.Super. 1999)).

In *Banniger, supra* this Court held that evidence of intercourse with an unconscious person alone is insufficient to prove forcible compulsion, but the victim's unconsciousness can be a relevant factor in determining whether force was used during the assault. *Id.* at 1093 (quoting *Rhodes, supra* at 556, 510 A.2d at 1226) (stating: "A victim's 'mental and physical condition[,]' which can include lack of consciousness, is only one circumstance to be considered under the totality test for forcible compulsion"). Moreover, when a victim regains consciousness during an attack, the court may examine whether the defendant's actions after the victim became aware meet the definition of forcible compulsion. *Commonwealth v. Price*, 616 A.2d 681, 683 (Pa.Super. 1992) (holding that evidence was sufficient for factfinder to find forcible compulsion where victim woke up while defendant was having intercourse with her, screamed for him to stop, and defendant continued penetration).

Instantly, at docket No. 2518, the evidence at trial established that after M.T.M. entered the hotel room, Appellant became aggressive and ordered her to take her clothes off. After M.T.M. refused to perform oral sex on him, Appellant forced her to do so. Appellant then climbed on top of her and held

her down while he penetrated her vagina with his penis. (*See* N.T. Trial, 6/27/23, at 48-49).

At docket No. 2519, the evidence at trial established that E.L. awoke while Appellant was on top of her and vaginally penetrating her. She screamed and Appellant told her that he would kill her if she did not stop yelling. Appellant pinned her down to the front passenger seat with his hands and torso. Appellant placed his hands around her neck and told her that he would kill her if she did not stop yelling. Appellant then forced E.L. to turn around so that she was facing the seat and forced his penis into her anus. (*See id.* at 124-26).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, the record supports Appellant's conviction at docket No. 2518 for rape by forcible compulsion and at docket No. 2519 for rape by forcible compulsion and IDSI by forcible compulsion. *See Sebolka, supra*; 18 Pa.C.S.A. §§ 3121(a)(1); 3123(a)(1). Notably, testimony from each victim on her own would have been enough to support Appellant's convictions. *See Castelhun, supra*. The jury was free to credit testimony from M.T.M. and E.L., and to reject testimony from Appellant; we will not substitute our judgment for that of the factfinder. *See Sebolka, supra*. Thus, Appellant is not entitled to relief on his second issue. Accordingly, we affirm.

Judgments of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>10/15/2025</u>