J-S24005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :

v.                              :
                                          :

DEYON KHALEE THOMAS-KAY    :
                                          :

Appellant           :      No. 195 WDA 2024

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001229-2022

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                          :          PENNSYLVANIA
                                          :

v.                              :
                                          :

DEYON KHALEE THOMAS-KAY    :
                                          :

Appellant           :      No. 196 WDA 2024

Appeal from the Judgment of Sentence Entered December 19, 2023
In the Court of Common Pleas of Cambria County Criminal Division at
No(s): CP-11-CR-0001231-2022

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:          **FILED: December 31, 2025**

Appellant Deyon Khalee Thomas-Kay appeals from the judgment of sentence imposed after a jury convicted him of simple assault, firearms not to be carried without a license, receiving stolen property (RSP), two counts of possession with intent to deliver (PWID), tampering with physical evidence, flight to avoid apprehension, two counts of possession of a controlled

substance, and possession of drug paraphernalia.[1,2]   On appeal, Appellant challenges the sufficiency of the evidence for his conviction for RSP, the consolidation of his cases, the trial court's evidentiary rulings, and the discretionary aspects of his sentence.   After review, we affirm Appellant's judgment of sentence in part and reverse in part.

The trial court summarized the facts of the case as follows:

[O]n August 4, 2022, Officer Robert Hanick (Hanick) of the Johnstown Police Department (JPD) was dispatched to the residence of Tyra Prince (Prince) for a reported domestic violence [incident].  Upon arrival, Prince informed Hanick that [Appellant] had assaulted and strangled her during an argument.  Hanick observed that Prince had red marks on her neck, a bloody nose, and a fat lip.  Charges were filed against [Appellant] and a fugitive warrant was eventually issued.

On October 10, 2022, JPD Officers Peter Forestieri (Forestieri) and Joseph Scharf (Scharf) were parked beside each other in marked cruisers in the area of the Oakhurst Homes public housing watching live camera feeds from the [area].  Forestieri saw a person he believed was [Appellant] on the video feed and advised Scharf that [Appellant] had an active warrant.  Scharf then confirmed that the person was [Appellant] and the officers then drove their cruisers to the area [where Appellant] was seen[, which was around] buildings 34 and 35. On arriving the officers saw [Appellant] who, upon noticing the cruisers, fled on foot. Forestieri exited his cruiser and pursued [Appellant] on foot while Scharf drove his cruiser around building 35 in an attempt to intercept [Appellant].   Forestieri ordered [Appellant] to stop

---

[1] 18 Pa.C.S. §§ 2701(a), 6106(a), 3925(a); 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 4910(1), 5126(a); 35 P.S. §§ 780-113(a)(16), and (a)(32), respectively.

[2] On January 31, 2024, Appellant also pled guilty to disorderly conduct, 18 Pa.C.S. § 5503(a)(4), graded as a summary offense, in lieu of pleading guilty to a severed charge of persons not to possess a firearm on Docket No. 1231-2022.  *See* N.T. Plea Hr'g, 1/31/24, at 2-4, 11.

several times and he ignored those commands and ran behind building 34. Forestieri saw [Appellant] throw what appeared to be a handgun near building 34 while continuing to pursue him. Scharf drove around building 35 and observed [Appellant] hiding near building 34 and drove towards him.

When he saw Scharf approaching, [Appellant] again fled. Scharf observed that while running several items fell off or were thrown by [Appellant] including his boots. Scharf lost sight of [Appellant] as he rounded building 34 after which he saw Forestieri in pursuit of [Appellant]. While pursuing [Appellant], Forestieri deployed his Taser but only one probe struck [Appellant] and thus had no effect on him. [Appellant] eventually tripped at which time Forestieri attempted to take him into custody. [Appellant] was uncooperative and resisted Forestieri who was eventually able to handcuff him with the assistance of Scharf.

Forestieri [first] told Scharf that he thought [Appellant] had thrown a handgun near building 34 then walked [Appellant] over to in front of Scharf's cruiser. Upon reaching the vehicle Forestieri testified that he observed nothing on the ground and searched [Appellant] finding a digital scale. Scharf located a handgun near building 34 which had a loaded magazine in it and had a round in the chamber. Scharf made the weapon safe and retrieved [Appellant's] boots and other items before returning to his vehicle. When he reached his vehicle he placed the boots on the hood along with the handgun and other items while telling [Appellant] and Forestieri what he found. Scharf then placed the handgun and magazine in one of [Appellant's] boots. Forestieri ran a check on [Appellant] and found that he was not licensed to possess a firearm and had no weapons registered to him.

[] Officer Adam Grumling (Grumling) arrived as backup for Forestieri and Scharf and while retrieving the items from the hood of the cruiser observed a plastic baggie and piece of folded aluminum foil on the ground in front of the cruiser. Both Forestieri and Scharf testified that the items had not been on the ground initially. Scharf testified that a recording from his cruiser's dash camera, which was not preserved[ for trial], showed [Appellant] standing in front of the cruiser and while handcuffed alternately reaching for his pants front pocket and waistband. Scharf noted that the recording did not show [Appellant] retrieving anything from either location.

The baggie was found to contain a white powdery substance the officers believed to be heroin and the foil contained small crystalized rocks suspected to be methamphetamine. Subsequent lab testing confirmed that the white powder was a mixture of heroin and fentanyl while the foil contained methamphetamine.

Relative to the handgun, evidence showed that it was fully functional and had been stolen from Andrew Mitrus. Timothy Gavel (Gavel), a forensic DNA scientist for the Pennsylvania State Police Crime Lab, testified that [Appellant's] DNA, along with the DNA of three other individuals, was found on the handguns grip, trigger, and magazine. Further, Gavel testified that it was possible [Appellant's] DNA got onto the handgun and/or magazine via secondary transfer when the weapon was placed inside one of his boots at the crime scene.

A portion of a telephone call between [Appellant] and Prince that was recorded while he was [incarcerated] was played for the jury and [Appellant] admitted to having a relationship with Prince and strangling her in August 2022.

[Appellant] testified that he had been involved with Prince for four or five years in an on and off relationship and that they have a daughter together. He explained that during the August 2022 incident he and Prince had been arguing and that he shoved her up against a wall during that argument. [Appellant] stated that[,] while on the recording he said he strangled Prince[,] that is not what he meant or what happened [and that] he only pushed her to get her out of his way. As to the October incident, [Appellant] admitted that he fled from the officers because he knew he had an active arrest warrant for the domestic violence incident. [Appellant] explained that he was trying to obtain money to post bail prior to turning himself [in to] authorities. [Appellant] denied having ever had possession of the handgun or drugs other than a small amount of marijuana for his personal use that he had just purchased.

On cross-examination, [Appellant] again acknowledged that he knew there was a warrant for his arrest and that he actively sought to avoid the officers that night. [Appellant] admitted that Prince had called officers multiple times to report domestic violence but again denied having strangled her in August but meant he "gripped her up" when he said strangled.

Trial Ct. Op., 10/15/24, at 4-7 (some formatting altered).

Appellant was arrested and charged with various offenses at four separate docket numbers on January 27, 2023.[3] Specifically, at Docket No. 1229-2022, the Commonwealth charged Appellant with strangulation, simple assault, witness intimidation, criminal mischief, and harassment. At Docket No. 1231-2022, the Commonwealth filed two informations: "Information A" and "Information B." Information A charged Appellant with theft by unlawful taking, RSP, firearms not to be carried without a license, flight to avoid apprehension, possession with intent to deliver, possession of a weapon, resisting arrest, tampering with evidence, two counts of possession of a controlled substance, and possession of drug paraphernalia. Information B charged Appellant with persons not to possess a firearm.

The Commonwealth filed a motion to consolidate all four cases on January 9, 2023. Following a hearing on January 24, 2023, the trial court granted the motion in an order dated February 3, 2023, which consolidated all four cases for trial with the exception of a single count of possession of a firearm prohibited at Docket No. 1231-2022, which was severed.[4]

On November 3, 2023, the Commonwealth amended the informations at Docket No. 1231-2022. The Commonwealth filed a single amended

---

[3] In addition to the two docket numbers that are the subject of this appeal, Appellant was also charged with offenses at Docket Nos. 1230-2022 and 708-2022.

[4] On June 9, 2023, upon consideration of Appellant's motion to dismiss, the trial court dismissed the case against Appellant at Docket No. 708-2022. **See** Appellant's Brief at 9; Commonwealth's Brief at 8.

information charging Appellant with RSP, firearms not to be carried without a license, flight to avoid apprehension, two counts of PWID, possession of a weapon, resisting arrest, tampering with evidence, two counts of possession of a controlled substance, and possession of drug paraphernalia. A jury was selected on November 9, 2023, with opening statements and testimony set to begin on November 20, 2023.

On November 20, 2023, the day that opening statements and testimony were to begin, the Commonwealth amended the informations at Docket Nos. 1229-2022 and 1231-2022. The information at Docket No. 1229-2022 was amended to charge Appellant with strangulation, simple assault, and harassment. The Commonwealth also filed a single amended information for Docket No. 1231-2022, which charged Appellant with RSP, firearms not to be carried without a license, two counts of PWID, resisting arrest, tampering with evidence, flight to avoid apprehension, two counts of possession of a controlled substance, and possession of drug paraphernalia. After the amendment, Appellant's trial began before the Honorable Norman A. Krumenacker III.

On the second day of trial, November 21, 2023, the Commonwealth withdrew the case against Appellant at Docket No. 1230-2022. *See* N.T., 11/21/23, at 3. That same day, Appellant was found guilty of simple assault

at Docket No. 1229-2022.[5]  Additionally, at Docket No. 1231-2022, Appellant was found guilty of RSP, firearms not to be carried without a license, two counts of PWID, tampering with evidence, flight to avoid apprehension, two counts of possession of a controlled substance, and possession of drug paraphernalia.[6]

On December 19, 2023, Appellant was sentenced to an aggregate term of seven and a half to twenty-five years' incarceration.[7]  Appellant filed a post-sentence motion to modify sentence on December 21, 2023.  On January 11, 2024, after a hearing, the trial court denied Appellant's motion.[8]

_____

[5] Appellant was found not guilty of strangulation and harassment at that docket number.  *See* N.T., 11/21/23, at 113, 117; Trial Ct. Op., 10/15/24, at 1.

[6] Appellant was found not guilty of resisting arrest at this docket number.  *See* N.T., 11/21/23, at 115; Trial Ct. Op., 10/15/24, at 1.

[7] Specifically, the court sentenced Appellant to twelve to forty-eight months' incarceration for RSP, forty-two to eighty-four months' incarceration for firearms not to be carried without a license, eighteen to eighty-four months for each count of PWID, twenty-four months' probation for tampering with evidence, twenty-four months' probation for flight to avoid apprehension, twelve months' probation for each count of possession of a controlled substance, twelve months' probation for possession of drug paraphernalia, and twenty-four months' probation for simple assault.  The trial court imposed each of Appellant's sentences for PWID, RSP, and carrying a firearm without a license to run consecutive to each other.  The trial court also imposed all the probationary sentences to run concurrent to each other and to Appellant's sentence for PWID.

[8] The trial court's December 19, 2023 sentencing order stated Appellant's sentence for RSP was twelve to twenty-four months' incarceration.  In the order denying Appellant's motion, the trial court clarified that its sentence for
*(Footnote Continued Next Page)*

On January 31, 2024, before the Honorable Tamara R. Bernstein, Appellant pled guilty to disorderly conduct as a summary offense in lieu of pleading guilty to persons not to possess. *See* N.T. Plea Hr'g, 1/31/24, at 2-4, 11. That same day, the Commonwealth amended the information at Docket No. 1231-2022.[9] The amended information read "count correction only" but once again split the information into "Information A" and "Information B" and added the persons not to possess charge to Information B, which did not appear in the informations filed in November 2023. Appellant was sentenced to sixty days' probation to run concurrent to his sentence for firearms not to be carried without a license.[10] *See id.* at 10-11.

_____

RSP was twelve to forty-eight months' incarceration consecutive to Appellant's sentence for carrying a firearm without a license. *See* Trial Ct. Order, 1/11/24.

[9] We note that the amended information was entered on the docket on January 31, 2024. However, for reasons unknown, the amended information was not file stamped or served until February 28, 2024.

[10] Appellant does not raise any issues regarding his plea to, or sentence for, disorderly conduct in his brief. *See* Appellant's Brief at 6. However, on this record, we conclude that the court was without jurisdiction to rescind or modify the December 19, 2023 sentencing order; therefore, we must raise the propriety of the court's action *sua sponte*. *See* 42 Pa.C.S. § 5505 (stating that "a court . . . may modify or rescind any order **within 30 days** after its entry . . . if no appeal from such order has been taken or allowed" (emphasis added)); ***Commonwealth v. Tiglio***, 328 A.3d 1174, 1179 (Pa. Super. 2024) (stating that "[a] court. . . possess[es] the authority to modify any order within 30 days if no appeal has been filed under 42 Pa. C.S.[] § 5505. . . . [However, **a**] **court loses jurisdiction to take any action under this statute more than thirty days after sentencing**" (emphasis added)); ***see also Commonwealth v. Gentry***, 101 A.3d 813, 816 (Pa. Super. 2014) (stating this court may raise issues concerning jurisdiction *sua sponte*). *(Footnote Continued Next Page)*

Appellant filed a timely notice of appeal on February 5, 2024, along with a Rule 1925(b) statement. Trial counsel motioned to withdraw, which the trial court granted on February 8, 2024. Richard Corcoran, Esq. was appointed to represent Appellant on appeal.

We have reordered Appellant's issues on appeal as follows:

1. Did the Commonwealth present sufficient evidence to satisfy all elements of the offense of [RSP]?

---

As stated above, the Commonwealth amended the criminal information twice in the weeks leading up to trial. Neither of those amended informations included a disorderly conduct or persons not to possess charge. The Commonwealth then proceeded to trial without the person not to possess charge. At the conclusion of trial, the Commonwealth never raised the person not to possess charge with the trial court. *See* N.T., 11/21/23, at 117-18 (reflecting that the trial court disposed of the summary charge of harassment and scheduled sentencing without the Commonwealth raising the person not to possess charge). The trial court then sentenced Appellant on all of the charges on the amended information for which he was convicted. *See* N.T. Sentencing, 12/19/23, at 6-8. The trial court, having disposed of all the charges against Appellant, advised Appellant of his post-sentence motion and appellate rights. *See id.* at 9-11. Thereafter, Appellant filed a post-sentence motion, which the trial court denied. *See* Trial Ct. Order, 1/11/24. However, on January 31, 2024, over thirty days after Appellant was sentenced on December 19, 2023, Appellant pled guilty before Judge Bernstein to disorderly conduct in lieu of pleading guilty to the previously omitted person not to possess charge and was sentenced to sixty days' probation. *See* N.T. 1/31/24, at 2-3, 6-9, 11. At that point, the trial court did not have jurisdiction to modify or rescind the December 19, 2023 sentencing order. *See* 42 Pa.C.S. § 5505; *Tiglio*, 328 A.3d at 1179. Since the court did not have jurisdiction to rescind Appellant's sentencing order, Judge Bernstein's actions as to Docket No. 1231-2022 were a legal nullity and we must vacate Appellant's conviction and sentence for disorderly conduct. *See Commonwealth v. Morris*, 771 A.2d 721, 735 (Pa. 2001) (explaining that "[w]here a court is without jurisdiction it is without power to act and thus, any order that it issues is null and void" (citations omitted)).

2. Did the trial court err in granting the Commonwealth's motion to consolidate all of the Appellant's then pending cases for trial?

3. Did the trial court err in permitting the Commonwealth to present testimony based upon a video which was not preserved and provided to the defense?

4. Did the trial court err in permitting the Commonwealth to elicit evidence of prior acts in cross-examination of the Appellant?

5. Did the trial court abuse its discretion in imposing a sentence which was unduly harsh given the circumstances of the offenses and of the Appellant?

Appellant's Brief at 6.

## Sufficiency Claim

In his first claim, Appellant challenges the sufficiency of the evidence supporting his conviction for RSP. *See* Appellant's Brief at 34-36. Specifically, Appellant argues that "while the Commonwealth presented evidence that the firearm was in fact stolen, it presented no evidence to establish when the gun was stolen or reported stolen." *Id.* at 35 (citation omitted). Further, Appellant argues that the Commonwealth failed to present evidence establishing when Appellant came into possession of the firearm or any other "evidence that the firearm's serial number had been obliterated, or that any other characteristic of the firearm would support a premise that it was stolen." *Id.* at 36.

Our standard of review for challenges to the sufficiency of the evidence is as follows:

Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary. In reviewing the sufficiency of the evidence,

we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the factfinder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted and some formatting altered).

To convict a defendant of RSP, the Commonwealth "must prove that the defendant (1) intentionally acquired possession of the movable property of another; (2) with knowledge or belief that it was probably stolen; and (3) the intent to deprive permanently." *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa. Super. 2022) (citations omitted and some formatting altered).

Further, "[t]his Court has recognized that while mere possession of stolen property is insufficient to establish [guilty] knowledge, guilty knowledge may be inferred from unexplained, or unsatisfactorily explained, possession of recently stolen goods." *Id.* (citation omitted and some formatting altered). Additionally, this Court has explained that

"guilty knowledge" may be proven through other circumstantial evidence. Circumstantial evidence of guilty knowledge may include, *inter alia*, the place or manner of possession, alterations to the property indicative of theft, the defendant's conduct or statements at the time of arrest (including attempts to flee apprehension), a false explanation for the possession, the location

- 11 -

of the theft in comparison to where the defendant gained possession, the value of the property compared to the price paid for it, or any other evidence connecting the defendant to the crime.

*Id.* at 350-51 (citation omitted and some formatting altered).

Here, the trial court addressed Appellant's sufficiency claim as follows:

Forestieri testified that while pursuing [Appellant] he observed [Appellant] throw what appeared to be a handgun near building 34 and that he informed Scharf of this after [Appellant's] capture. Scharf testified that he located a handgun in the area Forestieri indicated near building 34 which had a loaded magazine in it and had a round in the chamber. Forestieri testified that he ran a check on [Appellant] and found that he was not licensed to possess a firearm and had no weapons registered to him. [Appellant] testified that he informed the officers at the time of his arrest that the handgun Scharf found was not his.

If accepted as true by the jury, Forestieri and Scharf's testimony would establish that [Appellant] was in possession of the handgun and that he sought to discard it prior to his arrest. In addition, the jury could conclude that [Appellant] fled officers to avoid being found in possession of a stolen handgun when arrested on the outstanding warrant. Further, the jury could reasonably infer from his lack of license to possess a handgun that [Appellant] had illegally obtained the handgun. From this and the fact that [Appellant] sought to dispose of the handgun, it is reasonable for the jury to conclude that he knew or had reason to believe that the illegally obtained handgun was stolen.

Trial Ct. Op., 10/15/24, at 24 (citations omitted).

After our review, we agree with the trial court's conclusion that the evidence presented at trial was sufficient to establish that Appellant committed RSP. *See Palmer*, 192 A.3d at 89. At trial, Andrew Mitrus testified that his nine-millimeter Smith & Wesson firearm was stolen from his vehicle while it was parked in front of his home in Johnstown, Pennsylvania. *See*

N.T., 11/20/23, at 99-100. Mitrus identified the serial number of the weapon as "HVR1333" and confirmed that the gun the Commonwealth entered into evidence was the same gun that he previously reported stolen. *Id.* at 100. Officer Forestieri testified that while he was attempting to apprehend Appellant during a foot pursuit, Appellant threw a firearm. *Id.* at 46-47. After apprehending Appellant, Officer Forestieri relayed that information to Officer Scharf, who "immediately went to the area where Officer Forestieri said he saw [Appellant] throw the gun" and located the gun in that area. *Id.* at 61, 83-84. The firearm, which Officer Scharf recovered, cleared for safety, and stored as evidence, was the same firearm that was stolen from Mitrus. *See id.* at 85, 99-100.

Further, the record contains sufficient circumstantial evidence to support an inference of guilty knowledge. Appellant was not licensed to carry a firearm and the firearm's record of sale did not show that it belonged to Appellant. *Id.* at 50. When approached by police, Appellant fled and, during the foot pursuit, threw the firearm. *Id.* at 46-47. When police recovered the firearm, Appellant denied that it was his. N.T., 11/21/23, at 29.

We conclude that the above evidence was sufficient to establish beyond a reasonable doubt that Appellant was guilty of RSP. *See Palmer*, 192 A.3d at 89. As Appellant concedes, the evidence discussed above establishes that the firearm was stolen. *See* Appellant's Brief at 35. Further, Appellant's lack of license, flight from police, attempt at discarding the firearm during the foot pursuit, and denial that the firearm was his is sufficient to support an inference

that Appellant believed the firearm was stolen. ***See Arias***, 286 A.3d at 351 (stating that a defendant's act of reaching toward the area where the stolen firearm was later located and refusal to cooperate with police during a routine traffic stop resulting in his forcible removal from the vehicle was sufficient to support an inference of guilty knowledge regarding the stolen firearm). Additionally, the fact that Appellant attempted to dispose of the firearm during the pursuit establishes his intent to deprive the owner of the property permanently. ***See*** 18 Pa.C.S. § 3901 (defining "deprive" as, *inter alia*, "to dispose of the property so as to make it unlikely that the owner will recover it").

Finally, as to Appellant's claim that the Commonwealth failed to present evidence showing when the firearm was stolen, when Appellant came into possession of the firearm, or that the serial number or another physical characteristic of the firearm was altered, we note that circumstantial evidence such as "the defendant's conduct or statements at the time of arrest including attempts to flee apprehension" or "a false explanation for the possession" are sufficient to establish guilty knowledge. ***See Arias***, 286 A.3d at 350-51. This Court has previously rejected similar arguments. ***See Commonwealth v. Gomez***, 224 A.3d 1095, 1100 (Pa. Super. 2019) (rejecting a sufficiency challenge to an RSP conviction where the Commonwealth did not present evidence showing "when the firearms were stolen, where or from whom they were stolen, or for how long they were in [the a]ppellant's possession"

(citation omitted)). Accordingly, the evidence was sufficient to prove Appellant's guilt for RSP and no relief is due.

**Consolidation of Cases**

Appellant's next claim is that the trial court erred by consolidating his cases for trial. *See* Appellant's Brief at 13-22. Specifically, Appellant argues that the cases at Docket Nos. 1229-2022 and 1231-2022 were "completely unrelated" and were only connected to each other because Appellant was the defendant in both cases and the officers who arrested Appellant in the case at Docket No. 1231-2022 initially approached Appellant because of outstanding warrants related to the other consolidated cases.[11] *Id.* at 17-18. Appellant contends that evidence of each underlying incident would have been inadmissible in separate trials for each case. *Id.* at 19. Appellant argues that the two cases stemmed from incidents that occurred at "different locations, perpetrated against distinctly different victims, and arose from unrelated disputes." *Id.* at 21. Accordingly, Appellant argues that the trial court erred by consolidating the cases pursuant to the *res gestae* exception because "[t]here was no story that required completion by introducing evidence of criminal propensity[.]" *Id.* at 21-22. Appellant concludes that "having an alleged domestic violence assault case tried with an otherwise unrelated case

---

[11] Since the case at Docket No. 708-2022 was dismissed and the Commonwealth withdrew the case at Docket No. 1230-2022, we do not address the consolidation of those cases. *See Commonwealth v. Bricker*, 41 A.3d 872, 881 (Pa. Super. 2012) (stating that issues related to dismissed counts were moot on appeal).

involving his alleged illegal possession of a gun and drugs and fleeing from officers was incredibly prejudicial and detrimental." *Id.* at 22.

This Court has previously discussed the law of consolidation and severance as follows:

> Whether to join or sever offenses for trial is within the trial court's discretion and will not be reversed on appeal absent a manifest abuse thereof, or prejudice and clear injustice to the defendant. It is the appellant's burden to establish prejudice.
>
> The general policy of the laws is to encourage joinder of offenses and consolidation of indictments when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence.
>
> Our Supreme Court has stated that while evidence of other crimes committed by a defendant is generally not admissible to show his criminal propensity, such evidence is relevant and admissible to establish the perpetrator's identity, or the existence of a common scheme or plan.
>
> . . . Pennsylvania Rule of Criminal Procedure 582(A)(1) provides that distinct offenses which do not arise out of the same act or transaction may be tried together if the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion, or the offenses charged are based on the same act or transaction. If the trial court finds that the evidence is admissible and the jury can separate the charges, the court must also consider whether consolidation would unduly prejudice the defendant.
>
> Pennsylvania Rule of Criminal Procedure 583 provides a court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.
>
> We explained, the "prejudice" of which Rule 583 speaks is that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant

- 16 -

evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

Finally[, r]eading [R]ules 582 and 583 together, our Supreme Court established the following test for severance matters:

> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: 1. whether the evidence of each of the offenses would be admissible in a separate trial for the other; 2. whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, 3. whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Gray*, 296 A.3d 41, 47-48 (Pa. Super. 2023) (citations omitted and some formatting altered).

Additionally, regarding the admissibility of evidence of other crimes, this Court has stated that

> Bad acts evidence is inadmissible to prove a defendant acted in conformity with those acts or to demonstrate a criminal propensity. However, evidence of bad acts is admissible pursuant to our rules of evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. This list is non-exclusive. Indeed, prior to the codification of our rules of evidence, our Supreme Court set forth the following list of exceptions to the general prohibition against bad acts evidence:
>
> > (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one naturally tends to prove the others; (5) to establish the identity of the person charged with the commission of the crime on trial where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who

- 17 -

committed the other; (6) to impeach the credibility of a defendant who testifies in his trial; (7) situations where defendant's prior criminal history had been used by him to threaten or intimidate the victim; (8) situations where the distinct crimes were part of a chain or sequence of events which formed the history of the case and were part of its natural development (sometimes called "*res gestae*" exception).

*Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835, 840 (1989) (citing *Commonwealth v. Lark*, 518 Pa. 290, 543 A.2d 491, 497 (1988)).

Our Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, i.e., the *res gestae* exception. . . .

In *Lark*, . . . our Supreme Court explained,

the "*res gestae*" exception to the general proscription against evidence of other crimes, is also known as the "complete story" rationale, i.e., evidence of other criminal acts is admissible "to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."

*Commonwealth v. Brown*, 52 A.3d 320, 325-26 (Pa. Super. 2012) (some citations omitted and some formatting altered).

Here, the trial court addressed the consolidation as follows:

As to the consolidation of [the case at Docket No. 1231-2022], there was no error in consolidating that case with the [case at Docket No. 1229-2022] as all of the elements of the [test for severance] are met. The evidence is readily capable of separation by the jury, evidence of each of the offenses would be admissible in a prosecution for the other, as the evidence constitutes a "chain or sequence of events that formed the history of the case, [and] is part of the natural development of the case." . . . [T]he Commonwealth's theory of [the case at Docket No. 1231-2022] was that [Appellant] fled from officers based on his knowledge that a warrant for his arrest was outstanding on the domestic violence cases[, which included the case at Docket No. 1229-

- 18 -

2022]. In his testimony [Appellant] acknowledged that this was in fact the reason he fled the officers. It was thus necessary for the Commonwealth to explain this fact to the jury in order for them to fully understand the sequence of events that led to [Appellant] seeking to flee from officers and leading them on a chase around the Oakhurst Homes. . . . [T]he evidence was admissible in the separate cases, was easily separable by the jury, and there was no undue prejudice.

Trial Ct. Op., 10/15/24, at 11 (citations omitted and some formatting altered).

After our review, we discern no abuse of discretion by the trial court in consolidating the case at Docket No. 1231-2022 with the case at Docket No. 1229-2022. *See Gray*, 296 A.3d at 47. As the trial court acknowledges, trying the cases together presented the full sequence of events to the jury and the consolidation of the cases satisfied the elements of the test for severance. *See id.* at 48.

At trial, Appellant testified that he ran from the officers because he had an outstanding arrest warrant for, among other cases, the case at Docket No. 1231-2022. *See* N.T., 11/21/23, at 28. Both arresting officers testified that they approached Appellant because of his arrest warrants for the other cases, which included the case at Docket No. 1229-2022. *See* N.T., 11/20/23, at 43-44, 80-81. Accordingly, evidence of Appellant's flight from police in the case at Docket No. 1231-2022 was admissible as evidence of consciousness of guilt in the domestic violence case at Docket No. 1229-2022. *See Commonwealth v. Hudson*, 955 A.2d 1031, 1036 (Pa. Super. 2008) (stating that "[w]hen a person knows that he is wanted in connection with a criminal investigation, and flees or conceals himself, such conduct is admissible as

evidence of consciousness of guilt" (citation omitted)). Further, evidence of the domestic violence case at Docket No. 1229-2022 would be admissible to explain Appellant's motive to flee police in the case at Docket No. 1231-2022. *See Commonwealth v. Torres*, 177 A.3d 263, 277 (Pa. Super. 2017) (holding drug evidence was admissible to explain defendant's flight and violent resistance of police arrest); *Commonwealth v. Soto*, 202 A.3d 80, 100-01 (Pa. Super. 2018) (evidence of defendant's parole status was admissible to show motive to flee an accident scene and avoid police); *see also Commonwealth v. Maloney*, 2085 EDA 2019, 2020 WL 4370897, at *4 (Pa. Super. filed July 30, 2020) (unpublished mem.) (finding that the trial court did not abuse its discretion in joining a flight case with the underlying charges at the case that caused defendant's flight because the underlying charges provided motive for the flight, and the flight showed consciousness of guilt as to the underlying charges).[12]

Additionally, the evidence was readily capable of separation by the jury. The case at Docket No. 1231-2022 involved charges related to Appellant's flight from Officers Forestieri and Scharf on October 10, 2022 at Oakhurst Homes. *See* Trial Ct. Op., 10/15/24, at 4-5. The case at Docket No. 1229-2022 involved charges related to Appellant's domestic abuse of Tyra Prince on August 4, 2022 at her residence. *See id.* at 4. Since the case involved

---

[12] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

- 20 -

"distinct criminal offenses that are distinguishable in time, space and the characters involved," the jury was capable of separating the evidence. **See Commonwealth v. Dozzo**, 991 A.2d 898, 903 (Pa. Super. 2010) (citation omitted).[13]

Finally, as to prejudice, Appellant simply states that "having an alleged domestic violence assault case tried with an otherwise unrelated case involving his alleged illegal possession of a gun and drugs and fleeing from officers was incredibly prejudicial and detrimental" without explaining more. **See** Appellant's Brief at 22. Accordingly, Appellant has not established that he was prejudiced by the consolidation of the two cases. **See Gray**, 296 A.3d at 47-48 (stating that it is Appellant's burden to establish prejudice and that "the 'prejudice' of which Rule 583 speaks is that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence" (citation omitted and formatting altered)); **see also Lark**, 543 A.2d at 501 (explaining that a trial court "is not . . . required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and

_____

[13] We further note that Appellant was acquitted of charges at both docket numbers, which suggests that the jury was capable of separating the evidence. **See Dozzo**, 991 A.2d at 903 (stating "the jury found [the] appellant not guilty of all charges in one case, and not guilty of three out of four charges in a second case, demonstrating the jury considered each case and each charge separately and did not cumulate the evidence" (some formatting altered)).

- 21 -

form part of the history and natural development of the events and offenses for which the defendant is charged").

Having determined that the consolidation of these cases satisfies the test for severance matters, we conclude that the trial court did not abuse its discretion in consolidating the cases for trial. **See Gray**, 296 A.3d at 47-48.

### Evidentiary Claims

Appellant's next two issues raise challenges to the trial court's evidentiary rulings. **See** Appellant's Brief at 28-33. Specifically, Appellant challenges the trial court's allowance of testimony regarding dashcam video that was not presented at trial pursuant to the best-evidence rule. **See id.** at 28-30. Further, Appellant challenges the trial court's decision to allow the Commonwealth to cross-examine him regarding his prior conviction for indirect criminal contempt. **See id.** at 31-33.

> Our standard of review for evidentiary issues is as follows:
>
> The admission or exclusion of evidence is within the sound discretion of the trial court, and in reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law. Thus[,] our standard of review is very narrow. To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

**Commonwealth v. Lopez**, 57 A.3d 74, 81 (Pa. Super. 2012) (citation and quotation marks omitted). An abuse of discretion "is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-

will or partiality, as shown by the evidence of the record." ***Commonwealth v. Talbert***, 129 A.3d 536, 539 (Pa. Super. 2015) (citation omitted).

### Best-Evidence Issue

Appellant claims that the trial court erred by allowing the Commonwealth to present testimony regarding a dashcam video that was not preserved or provided to him by the Commonwealth in discovery. ***See*** Appellant's Brief at 28-30. Specifically, Appellant argues that the trial court's decision to allow Officer Scharf to testify regarding the dashcam video violated the best-evidence rule because the Commonwealth failed to show that it was not at fault for the loss of the video. ***Id.*** at 28, 30. Appellant argues that it was not harmless error to allow testimony about the video because "the Commonwealth specifically relied upon this testimony in its closing argument to convict the Appellant of the two [PWID] offenses." ***Id.***

The best-evidence rule, which has roots in the common law, is codified at Pa.R.E. 1002. ***See Commonwealth v. Fisher***, 764 A.2d 82, 87-88 (Pa. Super. 2000). Rule 1002 states that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. However, "Rule 1002 is applicable only in circumstances where the contents of the writing, recording or photograph are integral to proving the central issue in a trial." ***Fisher***, 764 A.2d at 88 (citation omitted); ***see also*** Pa.R.E. 1002 cmt. (stating that the rule only applies to items that are "operative or dispositive" and concluding that "[i]t is rare that a recording or

photograph would be operative or dispositive" as they are "usually only evidence of [a] transaction, thing or event"). "Consequently, if the Commonwealth is introducing a writing, recording, or photograph at trial, Rule 1002 requires that the original be introduced only if the Commonwealth must prove the contents of the writing, recording or photograph to establish the elements of its case." *Fisher*, 764 A.2d at 88 (citations omitted). Where recordings do not provide evidence that establishes the fundamental components of the crimes charged, the Commonwealth is not required to introduce the original recordings. *Id.* at 89.

Here, the trial court addressed Appellant's claim as follows:

[Appellant] asserts that the Court erred in permitting [Officer] Scharf [to] testify[] regarding the video from his cruiser's dash camera where that recording had not been preserved.

[Officer] Scharf testified that the dash camera in his vehicle recorded the chase [and] what occurred when [Appellant] was briefly placed in front of the cruiser. [Officer] Scharf explained that the video was uploaded to the [Johnstown Police Department] computers, he viewed the video after the incident, and that the video was not preserved for trial. **[Officer] Scharf testified the video showed the chase from his point of view including [Appellant's] resisting [Officer] Forestieri and his eventual capture by the officer. This testimony is consistent with both [Officers] Scharf's and Forestieri's testimony. In addition[, Officer Scharf testified that] the video showed [Appellant] standing in front of the cruiser with his hands handcuffed behind his back and contorting his body in an effort to reach his front pocket and front waistband area. [Officer] Scharf testified that while he observed [Appellant] reach into these areas he did not see him remove anything from either location [on the video].**

There was no error in permitting [Officer] Scharf to testify regarding the video as it was consistent with his testimony of what

- 24 -

occurred and what he observed personally during the pursuit of [Appellant].

Trial Ct. Op., 10/15/24, at 12-13 (citations omitted and emphasis added).

After our review, we discern no abuse of discretion by the trial court in allowing the officer to testify about the dash cam video. *See Lopez*, 57 A.3d at 81. Appellant contends that the dash cam video caused him prejudice because the Commonwealth relied on the testimony in closing "to convict the Appellant of the two [PWID] offenses . . . ." Appellant's Brief at 30. While it is true that the Commonwealth referenced the testimony regarding the video in its closing, *see* N.T., 11/21/23, at 72, the video was not "operative or dispositive" to Appellant's convictions for PWID. *See* Pa.R.E. 1002 cmt.

Officer Forestieri testified that, prior to ending up in front of Officer Scharf's vehicle with Appellant, he did not observe anything on the ground in front of the vehicle. N.T., 11/20/23, at 48. Further, Officer Scharf testified that, after he retrieved the firearm that Appellant dropped, he did not see anything in front of his vehicle. *Id.* at 84. Officer Grumling testified that, when he arrived on scene, he began assisting Officers Forestieri and Scharf when he noticed a Ziploc bag and tinfoil in the area where the officers had previously patted Appellant down in front of Officer Scharf's vehicle. *Id.* at 66-67. Officer Grumling collected the bag and tinfoil as evidence. *Id.* at 68-70. The contents of the bag and tinfoil tested positive for heroin, fentanyl, and methamphetamine. *See* N.T., 11/21/23, at 7-10.

In light of the officers' testimony, the contents of the dashcam video simply provided additional circumstantial evidence of Appellant's possession of the bag and tinfoil and, therefore, was not dispositive to any of the elements of PWID.  In Officer's Scharf's testimony regarding the video, he stated there was only a limited amount of time where he was not physically present for what transpired on the video.  **See** N.T., 11/20/23, at 91.  Officer Scharf stated that the video from that period showed Appellant "contorting himself" and reaching around in his pockets and the front of his waistband.  **Id.** at 90-91.  Importantly, Officer Scharf stated that he did not see Appellant remove anything from his pockets or waistband during the video.  **Id.** at 91.  Since the Commonwealth did not need to "prove the contents of the [video] to establish the elements of its case," the best-evidence rule did not apply.  **See Fisher**, 764 A.2d at 88 (citation omitted).  Accordingly, the trial court did not abuse its discretion by allowing Officer Scharf to testify about what he observed on the dashcam video.  **See Lopez**, 57 A.3d at 81.

<u>Cross Examination of Appellant</u>

Appellant claims that the trial court erred in allowing the Commonwealth to cross-examine him about his prior indirect criminal contempt conviction. Appellant's Brief at 31-33.  Appellant contends that the line of questioning was inadmissible under Pa.R.E. 404 as the Commonwealth merely sought to establish that Appellant "was an individual who would violate a court order" and "blame others for his issues."  **See id.** at 32-33 (citations omitted).

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *Commonwealth v. Lewis*, 885 A.2d 51, 54 (Pa. Super. 2005) (quoting Pa.R.E. 404(b)(1)).

However,

[e]vidence implying other crimes may be introduced when the evidence has a proper evidentiary purpose and is not used merely to demonstrate that the defendant is a person of bad character with a propensity to commit crime. It is black letter law that the Commonwealth may impeach a defendant's credibility with reference to prior crimes where the defense opens the door. The defendant is not insulated from being discredited about the factual accuracy simply because that proof involves other crimes.

*Commonwealth v. Hood*, 872 A.2d 175, 185 (Pa. Super. 2005) (citations omitted and some formatting altered). Further, this Court has stated:

One who induces a trial court to let down the bars to a field of inquiry that is not competent or relevant to the issues cannot complain if his adversary is also allowed to avail himself of that opening. The phrase 'opening the door' . . . by cross examination involves a waiver. If defendant delves into what would be objectionable testimony on the part of the Commonwealth, then the Commonwealth can probe further into the objectionable area.

*Lewis*, 885 A.2d at 54-55 (citations omitted).

Additionally, a trial court can admit evidence of a defendant's non-*crimen falsi* prior convictions under 42 Pa.C.S. § 5918. *See Commonwealth v. Hernandez*, 862 A.2d 647, 650 (Pa. Super. 2005). "[Section] 5918 allows the prosecution to cross-examine a defendant concerning his past convictions

to 'repudiate specific evidence of good character' offered by that defendant."

*Id.* (citation omitted). Section 5918 reads in relevant part:

> No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless . . . he . . . has given evidence tending to prove his own good character or reputation[.]

42 Pa.C.S. § 5918(1) (some formatting altered).

> Here, the trial court addressed the issue as follows:

> Here, there was no error in permitting this questioning as [Appellant] had testified, unasked, regarding his criminal record and his repeated violations of the no contact provision of both the PFA and the no contact provision of his bond conditions. As such he opened the door to questioning on this issue. . . . Thus[,] there was no error in permitting a limited cross-examination on this issue, where [Appellant] had previously admitted the conduct in his testimony and[,] thus[,] opened the door to the topic.

Trial Ct. Op., 10/15/24, at 28-29 (citations omitted).

After review, we discern no abuse of discretion. *See Lopez*, 57 A.3d at 81. On direct examination, Appellant testified that he had been in contact with the victim, Tyra Prince, in the weeks leading up to trial. *See* N.T., 11/21/23, at 23-26. He stated that Prince came to his hotel room on the morning of jury selection and the two engaged in sexual intercourse. *Id.* at 23-24. Appellant stated that Prince was forced to testify by the Commonwealth. *Id.* at 23. He stated that Prince was repeatedly texting him

during the lead up to trial and sending him nude photos and videos of herself. *Id.* at 25-26.

On cross-examination, the Commonwealth asked Appellant whether he had violated the no-contact condition of his bail. *See id.* at 32-33. Appellant replied: "I'll admit and acknowledge that [Prince] constantly keeps reaching out to me . . . . And I feel like y'all scare her – y'all scare her to come to court[.]" *Id.* at 33.

Additionally, while Appellant was being cross-examined by the Commonwealth, after he had already admitted that he knew he had a warrant out for his arrest, the following exchange took place:

[The Commonwealth]: Sir, you just testified that you were -- you knew you had a warrant?

[Appellant]: I did know. Yes, I did.

[The Commonwealth]: And you saw the police, and you tried to walk away and you tried to get away?

[Appellant]: At the same time, I didn't know if they come over there just for me. There's a crowd of people out here so I'm thinking they just coming to see what was going on because of the crowd of people. I was trying to do – I was -- like, at the same time I got kids and stuff over here, too. **As you can see on my record, I don't have a felony, I don't have a flight risk, I don't have a nothing. I came to this courthouse every time.** I don't come from -- every time since I been free, I don't -- I come all the way from Philadelphia every time to come to court. I don't come here for -- I drive four and a half hours up here every day to come to court to prove my innocence. Y'all offered me a deal where I didn't even have to go back to a jail cell.

[The Commonwealth]: Sir, we're not talking about --

[Appellant]: I apologize.

- 29 -

> [The Commonwealth]: So you brought up your record.
>
> [Appellant]: Yes.
>
> [The Commonwealth]: You have an indirect criminal contempt conviction, correct?
>
> [Appellant]: Indirect what?
>
> [The Commonwealth]: You have a conviction for indirect criminal contempt?

N.T., 11/21/23, at 37-38 (emphasis added). At that point, trial counsel objected and argued that questioning Appellant about his record was prejudicial. *Id.* at 38-39. The Commonwealth argued that the Appellant opened the door to the line of questioning by referring to his criminal record and Prince's contact with him. *Id.* at 39. The trial court agreed and overruled the objection. *Id.*

> The Commonwealth was then allowed to make the following inquiries:
>
> [The Commonwealth]: I'll repeat my question, sir. You have a conviction for indirect criminal contempt, correct?
>
> [Appellant]: What do you mean?
>
> [The Commonwealth]: You were convicted of violating a Protection from Abuse Order [PFA], correct?
>
> [Appellant]: Right.
>
> [The Commonwealth]: Yes?
>
> [Appellant]: Yes.
>
> [The Commonwealth]: And the protected party in that was Tyra Prince, correct?
>
> [Appellant]: Yes.
>
> [The Commonwealth]: So it's fair to say that you have a history, not only in this case but in prior cases, of ignoring courts telling you not to have contact with her, correct?

[Appellant]: No. I feel it's all the same situation. This is all one thing. Y'all gave me the PFA violation because I had a Rule 600 and I was coming home so I feel like y'all locked me – y'all did -- what y'all did was lock me in a jail cell so I wouldn't be able to come home because y'all wanted me to take a deal instead of me fighting my case. I was --

[The Commonwealth]: So it's --

[Appellant]: Y'all -- I can show paperwork that I was in no way was I violating the PFA in February. In June --

[The Commonwealth]: So it's everyone else's fault? It's everyone else's fault?

[Appellant]: No, I'm not saying that.

[The Commonwealth]: You admit that you strangled her but it's her fault?

[Appellant]: No, I'm not saying that at all.

[The Commonwealth]: You just admitted that you violated court orders not to contact her multiple times. That's also her fault?

[Appellant]: If you see the messages, you see if she's contacting me. . . .

***Id.*** at 39-40.

We conclude that Appellant opened the door to the Commonwealth's questions about his prior criminal record by referencing it. ***See Hood***, 872 A.2d at 185; ***see also Lewis***, 885 A.2d at 54-55. Further, we conclude that, by testifying he was in contact with Prince but that she was the person contacting him through no fault of his own, Appellant opened the door to questions about his prior violation of a PFA order, which resulted in his conviction for indirect criminal contempt, where Prince was the protected party. ***See Hernandez***, 862 A.2d at 650; 42 Pa.C.S. § 5918. Accordingly, the trial court did not abuse its discretion by overruling trial counsel's objection

and allowing the Commonwealth to inquire about Appellant's criminal record and PFA violation. **See Lopez**, 57 A.3d at 81.

**Discretionary Sentencing Issue**

In his final issue, Appellant argues that the trial court abused its discretion at sentencing by "imposing a sentence which was unduly harsh given the circumstances of the offenses and of [] Appellant." **See** Appellant's Brief at 23-27. Specifically, "Appellant contends that the trial court abused its discretion in sentencing [] Appellant to consecutive sentences . . . because it sentenced [] Appellant on four of the cases to the top of the standard range of the sentencing guidelines to the statutory maximum on the offenses in a consecutive manner." **Id.** at 12.

Initially, we note that "challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." **Commonwealth v. Derry**, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted and formatting altered).

> Before we evaluate the merits of Appellant's claim, we must determine:
>
> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted and some formatting altered).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." **Commonwealth v. Malovich**, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); **see also** Pa.R.A.P. 302(a)(stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Battles**, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Grays**, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved his issues by raising them in his post-sentence motion, filing a timely notice of appeal and a court-ordered Rule 1925(b) statement, and including a Rule 2119(f) statement in his brief. **See Corley**, 31 A.3d at 296. Appellant presents two reasons why he presents a substantial question for our review. **See** Appellant's Brief at 12. First, he claims "that the trial court's sentence was based upon evidence which the Commonwealth inappropriately attempted to present." **Id.** However, Appellant does not explain what evidence the Commonwealth "attempted to

present" that allegedly resulted in the trial court abusing its sentencing discretion. **See id.** at 12, 23-27. Accordingly, we conclude that Appellant has not raised a substantial question based on this argument. **See Malovich**, 903 A.2d at 1252 (stating this Court "do[es] not accept bald assertions of sentencing errors" (citation omitted)).

Additionally, Appellant claims that he has raised a substantial issue because "the trial court abused its discretion in sentencing [] Appellant to consecutive sentences in the present case because it sentenced [] Appellant on four of the cases to the top of the standard range of the sentencing guidelines to the statutory maximum on the offenses in a consecutive manner." Appellant's Brief at 12. While this court has recognized that challenges to consecutive sentences may raise a substantial question, they only do so when the consecutive sentence appears *prima facia* excessive based on the criminal conduct of the case. **See Commonwealth v. Mastromarino**, 2 A.3d 581, 586-87 (Pa. Super. 2010). Appellant has failed to set forth why his consecutive sentences are facially excessive based on his conduct. **See id.** at 12, 23-27. Appellant simply states that the trial court failed to "take into account his circumstances and the circumstances of his offenses." **Id.** at 27. Therefore, we conclude that Appellant has failed to raise a substantial question for our review. **See Malovich**, 903 A.2d at 1252; **see also Commonwealth v. Carls**, 1473 MDA 2023, 2024 WL 2747729, at *3 (Pa. Super. filed May 29, 2024) (unpublished mem.) (failing to find a substantial question where Appellant contended that he received a

consecutive sentence but failed to argue why his consecutive sentence was unduly harsh by discussing the nature and facts of his crimes). Accordingly, we do not reach the merits of Appellant's discretionary sentencing claim. **See Corley**, 31 A.3d at 296. For these reasons, we affirm.

Judgment of sentence affirmed in part and reversed in part.[14] Conviction for disorderly conduct vacated. Application for relief and writ of mandamus denied.[15] Jurisdiction relinquished.

---

[14] Since vacating Appellant's sentence for disorderly conduct does not disturb the trial court's overall sentencing scheme, we do not need to remand this case for resentencing. **See Commonwealth v. Thur**, 906 A.2d 552, 570 (Pa. Super. 2006).

[15] On September 9, 2025, Appellant filed a *pro se* "Motion for Hearing on Lawyer Performance Writ of Mandamus" alleging that his appellate counsel was ineffective. **See** *Pro Se* Motion, 9/9/25. Additionally, on September 29, 2025, Appellant *pro se* filed a document entitled "*Pro-Se* Brief" claiming that appellate counsel failed to raise issues on appeal and attempting to raise issues *pro se*. **See** *Pro Se* Motion, 9/29/25.

This Court previously remanded Appellant's case twice for hearings, pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998), to determine Appellant's representation wishes on appeal. **See** Order, 4/17/24; Order, 5/22/24. At both **Grazier** hearings Appellant stated he wished to be represented by counsel on appeal. **See** Trial Ct. Response, 4/29/24; Trial Ct. Response, 7/8/24. Our order from May 22, 2024 directing the trial court to conduct the second **Grazier** hearing advised Appellant that "no further requests regarding Appellant's representation will be entertained, as Appellant has already received three different court-appointed attorneys." Order, 5/22/24. Nonetheless, this Court has denied multiple subsequent *pro se* motions requesting the same relief. **See** Order, 8/9/24; Order, 8/22/24; Order 11/1/24.

*(Footnote Continued Next Page)*

Judge Lane joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/31/2025

---

Considering our numerous orders advising Appellant that we would not be entertaining further requests regarding Appellant's representation status, we deny Appellant's requests regarding counsel in his *pro se* filings from September 9, 2025 and September 29, 2025. **See e.g.**, Order, 5/22/24; **see also Commonwealth v. Rogers**, 645 A.2d 223, 224 (Pa. 1994) (stating that while an appellant has the right to proceed *pro se* on appeal, a criminal appellant cannot terminate counsel after counsel has filed an appellate brief simply because he wishes to file a brief *pro se*). To the extent that these *pro se* filings contained requests for relief other than those regarding counsel, since Appellant is represented by counsel, Appellant's *pro se* filings constitute hybrid representation and, therefore, have no legal effect and are legal nullities. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016).